[Crim. No. 15637. Second Dist., Div. One. June 9, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. RAMIRO REYES, JR., Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bernard S. Kamine, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury found defendant guilty of selling heroin (§ 11501, Health & Saf. Code); he admitted that he had been convicted of four prior felony convictions (two burglaries, robbery and possession of narcotics). Motion for a new trial was denied and defendant was sentenced to the state prison for the term prescribed by law, the sentences to run concurrently with other sentences he was then serving. He appeals from the order denying his motion for a new trial; he did not appeal from the judgment. An order denying a motion for new trial is not appealable and the purported appeal therefrom should be dismissed. (§ 1237, Pen. Code; *People* v. *Ing,* 65 Cal.2d 603, 614 [55 Cal.Rptr. 902, 422 P.2d 590].) However, inasmuch as defendant acted in propria persona in filing his notice of appeal, in the interest of justice we will liberally construe the notice of appeal and review the merits as though the judgment were before us. (*People* v. *Gotham,* 185 Cal.App.2d 47, 50-51 [8 Cal.Rptr. 20].)

Officer Salcido, an undercover narcotics investigator, had

been working in the fall of 1967 on a buy program for the Los Angeles Police Department; he had been introduced to an informant known only as Rudy. Around 11 a.m. on December 4, 1967, Officer Salcido met Rudy at the Grand Central Market where he gave Rudy from $15 to $20 to be used to purchase narcotics during the day; around 5:30 p.m. they went to the Brass Rail Tavern where they sat together at the bar. Shortly thereafter defendant came in and sat down a few stools to the right of Rudy; Rudy went over to talk to him. Officer Salcido went to the men's room and was followed by Rudy, then defendant. The three stood around one of the sinks while Rudy negotiated the purchase of a $10 balloon of heroin from defendant; it took about two minutes during which the officer gave Rudy $5 and at the conclusion of which Rudy gave defendant $10; defendant then took from his mouth a red balloon and handed it to Rudy who gave it to Officer Salcido. After paying Rudy for his services in arranging the sale, Officer Salcido took the balloon (Exh. 1) directly to the police building and checked it with Central Property.

Officer Fessler also was at the Brass Rail between 5:30 and 6 p.m. on December 4, 1967, and saw Officer Salcido, Rudy and defendant seated at the bar.

Sergeant Barber testified as a defense witness that in December 1967 he had been in charge of the November narcotics buy program for the Los Angeles Police Department; he introduced Rudy to Officer Salcido and instructed them both not to become friendly, engage in social activity, discuss personal lives or exchange names; he had been introduced to Rudy by another police officer; he did not know where Rudy lived and although he had made attempts to find him since defendant's arrest, had been unable to do so. Defendant did not testify.

The sole issue is whether there is sufficient evidence to sustain the judgment, the percentage of heroin in the powder contained in Exhibit 1 not having been determined. He claims that since only a qualitative analysis was made of the powder the People failed to prove that the sale involved heroin in sufficient quantity as to be useful either for consumption or for sale, citing *People* v. *Leal,* 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665], and *People* v. *McCarthy,* 64 Cal.2d 513 [50 Cal.Rptr. 783, 413 P.2d 671].

Exhibit 1 is the powder contained in the red balloon purchased by Officer Salcido from defendant in the men's room of the Brass Rail Tavern. At the trial it was stipulated that

Michael J. White, a Los Angeles police chemist "is a qualified forensic chemist and is an expert in the identification and analysis of the the narcotic known a heroin." He identified Exhibit 1, the contents of which had been placed by him in a glass vial. He testified that before placing the powder into the vial he weighed the powder and made a chemical examination as to the contents; that by weight the powder is .29 gram. White was then asked, "In your opinion is that a usable amount, sir?" No objection was interposed and he answered, "I would think so, yes." He then testified that he tested the chemical and physical nature of the powder; that he subjected the powder to two different color tests and a crystal test and formed the opinion that the powder contains heroin, also known as diacetylmorphine; he did not determine what percentage of the powder was pure heroin. On cross-examination White described the three tests used—the crystal, Marquis and Meckes; he was asked if the powder was pure heroin and he answered that he did not recall the percentage of heroin in the powder; he did not conduct a quantitative test. Defendant made no motion to strike White's answer to the question whether the powder in the balloon is a usable amount.

It was stipulated that Officer Barber is "an expert in the field of narcotics and particularly the manner in which it is packaged, the manner in which it is sold and the manner in which it is used within the County of Los Angeles." Officer Barber testified that the most common manner of packaging heroin in Los Angeles today is in toy rubber balloons; the experienced person "trafficking narcotics" carries the balloon in his mouth while transporting the drug in public places; in case officers approach him and he is in danger of being caught with the contraband he swallows it instantly. Asked if .29 gram of a mixture of heroin and some other substance is a usable amount, Officer Barber answered, "Yes." No objection to the question and no motion to strike the answer were made. Barber testified that .29 gram is approximately a standard $10 measure and it is one dose for a narcotic addict; that the normal dose of .29 gram usually is cut with milk sugar to contain only 5 to 7 percent of pure heroin. Defendant made no objection to the receipt in evidence of Exhibit 1 nor did he raise his present objection on the motion for a new trial. His motion was made on the insufficiency of the evidence based upon "the lack of identification by the two complaining witnesses." Later in arguing his motion to withdraw his admis-

sion to a prior narcotic conviction, defense counsel, after pleading that the case did not involve a real sale but was made to an officer in a ''buy program'' and is a close case as to entrapment, commented: ''I believe the amount sold was a sufficient amount to convict. However, I think it was not that he was a big dealer in the use of heroin. He was merely trying to make enough money to support his own habit. . . .''

While no quantitative analysis was made of the powder contained in Exhibit 1, Officer White testified that it contained heroin and that the powder by weight was .29 gram and was a ''usable amount.'' Officer Barber testified that the mixture of heroin and another substance involved in the sale here was a ''usable amount,'' in fact, a standard $10 measure constituting one dose for a narcotic addict. Officer Salcido testified that Rudy negotiated a purchase of a $10 balloon of heroin from defendant to whom Rudy gave $10, and that Exhibit 1 is the powder contained in the balloon defendant gave Rudy. In view of the foregoing, defendant's stipulation as to the expertise of White and Barber who testified that the powder contained heroin and is a ''usable amount'' and the absence of evidence to the contrary, the jury was justified in finding that the powder contained a usable amount of heroin. There is no merit to appellant's claim that the evidence is not sufficient to support the judgment.

The judgment is affirmed.

Fourt, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing was denied July 1, 1969, and appellant's petition for a hearing by the Supreme Court was denied August 6, 1969.