Filed 3/12/13  P. v. Gratton CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>RICHARD ALAN GRATTON,<br><br>　　　　Defendant and Appellant. | B238493<br><br>(Los Angeles County<br>Super. Ct. No. MA053037) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Naranjo, Judge.  Affirmed as modified.

Robert J. Waters, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Toni R. Johns Estaville, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Richard Alan Gratton, of methamphetamine possession (Health & Saf. Code, § 11377, subd. (a)) and methamphetamine possession in a jail (Pen. Code,[1] § 4573.6). Defendant possessed the methamphetamine on May 21, 2011. Defendant was acquitted of a remaining methamphetamine possession count. Six prior separate prison term one-year enhancements were imposed. (§ 667.5, subd. (b).) Defendant was sentenced on January 4, 2012, to 10 years, 8 months in the county jail. (§ 1170, subd. (h)(2).) We modify the judgment to award defendant 178 days of actual presentence custody credit and 178 days of conduct credit. In all other respects, the judgment is affirmed.

# II. THE EVIDENCE

On May 21, 2011, defendant was a passenger in a black Ford Mustang that was stopped by a sheriff's deputy. Defendant was questioned by Deputy Jason Goedecke. Defendant admitted he was on parole for a drug conviction. During a parole search of defendant's person, Deputy Goedecke found a motel room key. Defendant said he had been staying in the motel room for several days. During a parole compliance search of the motel room, Deputy Goedecke found a glass methamphetamine pipe containing .04 grams of methamphetamine.

Deputy Goedecke testified the methamphetamine in the pipe could be ingested to get high. The testimony was as follows: "Q. Can you explain how that bulb portion of the pipe looked [when you found it]? [¶] A. The bulb portion had . . . a little bit of white residue inside . . . . The bulb of the pipe actually had that, the white residue inside, and also had what appeared to be burnt methamphetamine. [¶] Q. And what did you do with that pipe? [¶] A. I took a brand-new unused paper clip and I scraped the pipe. Q. Now,

---

[1] All further statutory references are to the Penal Code except where otherwise noted.

is scraping the pipe, is that a term that you've heard before? [¶] A. Yes. [¶] Q. In the context of methamphetamine, can you explain to the jury what scraping the pipe means? [¶] A. Scraping the pipe basically means that you as you can see, there's white residue that lines the inside of the pipe. We take the unused brand-new paper clip and we open it up and we stick the paper clip inside and we actually scrape the pipe, which makes the methamphetamine that lines the pipe, makes it fall off and we can easily place it inside of a plastic bag. [¶] . . . [¶] Q. . . . [B]ased on your training and experience, also have you – based on your conversations with users of methamphetamine, do you have an opinion as to whether that portion that you scraped off can be ingested or can be used to get high? [¶] A. Absolutely. It's – It's extremely common for methamphetamine users. They'll use it. They'll go back and re-scrape it. Take all the methamphetamine that they scrape off, put it back inside the pipe, and they'll reuse it, smoke it again. [¶] Q. So basically when the methamphetamine is no longer usable, does it dissipate? Do you know what I mean by that? Does it disappear? [¶] A. Correct. [¶] Q. Okay. That's as opposed to like getting like ashy, I guess, and not be usable, just kind of -- [¶] A. Correct. [¶] Q. And that portion that you scraped out, . . . did you place it in a baggy? [¶] A. Yes, sir." During a subsequent booking search at the county jail, Deputy Goedecke found a baggy containing 2.43 grams of powder containing methamphetamine in defendant's right sock. Based on his training and experience, Deputy Goedecke testified this was "absolutely" a usable amount of methamphetamine.

Defendant stipulated he had previously been convicted of methamphetamine possession. He stipulated that, "[O]n October 26, 2010, defendant . . . was convicted of a violation of Health and Safety Code [section] 11377[,] subdivision (a) to wit, possession of methamphetamine in case number MA049409." In his defense, defendant presented evidence the motel room had been rented by a friend. The friend allowed defendant to store plumbing and other tools there. Defendant denied staying in the room and did not have a key to it.

### III.  DISCUSSION

#### A.  There Was Substantial Evidence The Methamphetamine In The Pipe Was In A Form And Quantity That Could Be Used

Defendant argues blackened residue or a useless trace of a controlled substance is insufficient to convict.  In *People v. Rubacalba* (1993) 6 Cal.4th 62, 66, our Supreme Court held:  "The [*People v. Leal* (1966) 64 Cal.2d 504, 512] usable-quantity rule prohibits conviction only when the substance possessed simply cannot be used, such as when it is a blackened residue or a useless trace.  It does not extend to a substance containing contraband, even if not pure, if the substance is in a form and quantity that can be used."  Here, Deputy Goedecke specifically testified the .04 grams of white methamphetamine residue in the pipe could be smoked to get high.  This was substantial evidence the methamphetamine in the pipe was in a form and quantity that could be used.  (See *People v. Camp* (1980) 104 Cal.App.3d 244, 248; *People v. Gossett* (1971) 20 Cal.App.3d 230, 234-235; *People v. Reyes* (1969) 273 Cal.App.2d 769, 773.)

#### B.  There Was Substantial Evidence Connecting Defendant With The Glass Methamphetamine Pipe Found In The Motel Room

Defendant asserts there was insufficient evidence connecting him to the glass pipe found in the motel room.  Viewing the evidence in the light most favorable to the judgment (*People v. Griffin* (2004) 33 Cal.4th 1015, 1028; *People v. Barnes* (1986) 42 Cal.3d 284, 303), we disagree.  Defendant was in possession of a key to the motel room.  Defendant said he had been staying in the motel room for several days.  There were male clothing and hygiene products in the motel room, together with mail and other documents bearing defendant's name.  Defendant possessed methamphetamine on his person.  This was substantial evidence the glass methamphetamine pipe found in the motel room belonged to defendant.

4

## C. The Trial Court Impliedly Found The Prior Separate Prison Term Allegations To Be True

Defendant contends the trial court failed to "explicitly" find true allegations defendant had served six one-year prior separate prison terms within the meaning of section 667.5, subdivision (b).[2] The lack of an explicit finding was not prejudicial to defendant. The trial court impliedly found the prior prison term allegations true. The information alleged defendant had served eight prior separate prison terms within the meaning of section 667.5, subdivision (b). Deputy District Attorney Theodore Swanson relied on prison records as prima facie evidence in support of the enhancements. (§ 969b; *People v. Tenner* (1993) 6 Cal.4th 559, 563; see *People v. Prieto* (2003) 30 Cal.4th 226, 258-259.) On November 29, 2011, Mr. Swanson and Deputy Alternate Public Defender Mario Barrera jointly reviewed the prison records. Mr. Swanson and Mr. Barrera agreed that according to those papers, defendant served six (not eight) such one-year prior prison terms. Mr. Barrera raised no evidentiary objection to the prison records. Defendant then waived his right to a jury trial on the prior prison term allegations. At sentencing, Mr. Barrera stated, "In regards to the six priors, we will submit." No doubt, having reviewed the prison records, Mr. Barrera was satisfied that the prison prior allegations were true.

---

[2]     At the time defendant committed the present offenses, section 667.5 provided in part: "Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows: [¶] . . . [¶] (b) Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison term therefor, the court shall impose a one-year term for each prior separate prison term served for any felony; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both prison of both prison custody and the commission of an offense which results in a felony conviction." [¶] . . . [¶] (g) A prior separate prison term for the purposes of this section shall mean a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after an escape from incarceration." (Stats. 2006, ch. 337, § 30, pp. 2364-2365.)

The trial court imposed six years under section 667.5, subdivision (b).  On this record, it is clear that, based on the prison records, the trial court impliedly found the prior separate prison term allegations true.  (See *People v. Clair* (1992) 2 Cal.4th 629, 691, fn. 17; *People v. Chambers* (2002) 104 Cal.App.4th 1047, 1050-1051.)  While the prison records were not formally introduced into evidence, it is apparent the trial court and both counsel considered them as if in evidence.  (See *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 742; *Reed v. Reed* (1954) 128 Cal.App.2d 786, 790-792.)  Any error was harmless.  The better practice, however, is to properly identify records used to litigate prior prison term issues, which documents should then be retained by the clerk in an appropriate format.

### D.  The Facts Supported Imposition Of The High Term

Defendant notes the trial court commented at the sentencing hearing that he appeared physically healthy, which led it to believe he sold methamphetamine rather than merely used it.  Defendant argues this factor is impermissible to use in sentencing a defendant to the upper term under the California Rules of Court.  Defendant did not object to the trial court's purported failure to properly make its discretionary sentencing choice of an upper term.  As a result, he forfeited this claim.  (*In re Sheena K.* (2007) 40 Cal.4th 875, 881; *People v. Smith* (2001) 24 Cal.4th 849, 852; *People v. Scott* (1994) 9 Cal.4th 331, 353.)  In any event, the trial court's comments focused on defendant's repeated convictions—eight misdemeanors and seven felonies—over a 12-year period, from 1988 to 2010.  Even if the trial court erred, the error was harmless; defendant's record of numerous prior convictions established a compelling basis for an aggravation finding.  (Cal. Rules of Court, rule 4.421(b)(2): *People v. Towne* (2008) 44 Cal.4th 63, 75-76; *People v. Stuart* (2008) 159 Cal.App.4th 312, 314; *People v. Hurley* (1983) 144 Cal.App.3d 706, 713-714.)

E.  Defendant Received Insufficient Presentence
Custody and Conduct Credits

1.  Custody Credit

Defendant received credit for 175 days in presentence custody.  However, defendant was in presentence custody for 178 days—from May 21, 2011, to May 23, 2011, and from July 14, 2011, to January 4, 2012.  The judgment must be modified to award defendant 178 days of custody credit.  (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48; *People v. Morgain* (2009) 177 Cal.App.4th 454, 469.)

2.  Conduct Credit

We asked the parties to address the issue of how defendant's presentence conduct credits were to be calculated.  Although there is some incertitude in the law on this subject, we need not resolve the potentially conflicting analysis.  The resolution of this issue depends on the application of two versions of section 4019 and a single amendment to section 2933, subdivision (e)(1).  In *People v. Garcia* (2012) 209 Cal.App.4th 530, 534-542 (*Garcia*), we examined five amendments to sections 2933, subdivision (e)(1) and 4019.  These five amendments were enacted between 2008 and 2011.  (*Id.* at pp. 534-535.)  Here, we need only address two versions of sections 2933 and 4019.

The first of the two versions of section 4019 is that enacted as part of Senate Bill No. 76 (2009-2010 Reg. Sess.).  (Stats. 2010, ch. 426, §§ 1-2.)  Senate Bill No. 76 also adopted former section 2933, subdivision (e)(1) which provided for one day of presentence conduct credit for each day served in local custody.  (*Garcia*, *supra*, 209 Cal.App.4th at p. 538.)  In *Garcia*, we analyzed an exception, which is not present here, to the one day of presentence custody credit for each day served in local custody calculation.  (*Id*. at pp. 540-541.)  The second relevant version of section 4019 is that enacted as part of Assem. Bill No. 1X 17 (2011-2012 Ex. Sess.).  (Stats. 2011 1st Ex.

7

Sess. 2011-2012, ch. 12, § 35.) Assembly Bill No. 1X 17, which adopted the current relevant conduct credit provision, provides for two days of conduct credits for each two days served in local custody. (§ 4019, subds. (b)-(c), (f).) The current provision of section 4019 was operative October 1, 2011. For clarity's purpose, we will refer to the various presentence conduct credit enactments by their Senate or Assembly bill numbers.

As noted, defendant was arrested and in custody for 3 days from May 21 through 23, 2011. Additionally, defendant was in custody from July 14, 2011, to January 4, 2012. There is an overlap between time served while defendant was subject to Senate Bill No. 76 and Assembly Bill No. 1X 17. In dictum, our Supreme Court discussed the potential for separate calculations when presentence custody overlaps between different versions of section 4019. (*People v. Brown* (2012) 54 Cal.4th 314, 322.) *Brown* was filed after the passage of Assembly Bill No. 1X 17. Our Supreme Court explained that when there is an overlap (as occurred here), two separate calculations are made as to the amount of conduct credits. (*People v. Brown, supra,* 54 Cal.4th at p. 322.) Section 4019, subdivision (h)[3] thus arguably requires that pre-October 1, 2011 conduct credits be calculated under Senate Bill No. 76. And, current section 4019, subdivision (h) arguably requires that conduct credits earned on October 1, 2011, and thereafter be calculated under Assembly Bill No. 1X 17. (See *People v. Brown*, *supra*, 54 Cal.4th at p. 322.) However, the Courts of Appeal have either held or noted in dictum that for crimes occurring prior to October 1, 2011, conduct credits are calculated under Senate Bill No. 76. (*People v. Rajanayagam, supra,* 211 Cal.App.4th at pp. 48, fn. 3, 51-52 [dictum ] ; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 388, 399-400; *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1552-1553 ; see *People v. Hul* (2013) 213 Cal.App.4th 182, 186-187; *People v. Verba* (2012) 210 Cal.App.4th 991, 994-997.)

---

**3** Section 4019, subdivision (h) states: "The changes to this section enacted by the act [FN2] that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

We need not resolve this legal conflict because under either Senate Bill No. 76 or Assembly Bill No. 1X 17, the result is the same. Prior to October 1, 2011, defendant was in custody for 82 days. Thus, pursuant to former section 2933, subdivision (e)(1), he receives 82 days of conduct credits. We recognize former section 2933 applied to "a prisoner sentenced to the state prison under Section 1170" for whom the sentence is executed. (Stats. 2010, ch. 426, § 1.) Pursuant to section 1170, subdivision (h)(2), defendant received an executed *county jail* sentence, not a state prison sentence. Before present section 1170, subdivision (h)(2) took effect, defendant would have been sentenced to state prison, not county jail. The trial court did not suspend the imposition or execution of sentence or suspend proceedings. (*Garcia*, *supra*, 209 Cal.App.4th at p. 538.) And upon being sentenced to prison, defendant would have received day-for-day conduct credit under former section 2933, subdivision (e)(1). No such credits were available for county jail sentences. But as the Attorney General concedes, under these circumstances, to deny defendant day-for-day conduct credit would violate the federal constitutional prohibition against ex post facto laws. (*Weaver v. Graham* (1981) 450 U.S. 24, 31, 35-36; cf. *People v. Flores* (2009) 176 Cal.App.4th 1171, 1182; see *People v. Lara* (2012) 54 Cal.4th 896, 905; Couzens & Bigelow, Felony Sentencing After Realignment, Sept. 2012, p. 43, www.courts.ca.gov/partners/documents/felony_ sentencing.pdf [as of Feb. 5, 2013].) Therefore, the judgment must be modified to award defendant 82 days of conduct credit under former section 2933, subdivision (e)(1), for the pre-October 1, 2011 periods of incarceration. Additionally, defendant was in custody for 96 days from October 1, 2011, to January 4, 2012. For the post-October 1, 2011 period of incarceration, under Assembly Bill No. 1X 17, defendant is entitled to 96 days of conduct credits.

Both periods of incarceration involved an even number of days of actual credit. Had the post-October 1, 2011 period of incarceration involved an odd number of days, then it would be appropriate to resolve the aforementioned conflicting analysis. Thus, it is unnecessary to evaluate the aforementioned Court of Appeal opinions in contrast to the

dictum in *People v. Brown*, *supra*, 54 Cal.4th at page 322.  Defendant is entitled to 178 days of conduct credit.

## IV.  DISPOSITON

The judgment is modified to award defendant 178 days of actual presentence custody credit and 178 days of conduct credit.  In all other respects, the judgment is affirmed.  Upon remittitur issuance, the clerk of the superior court is to prepare an amended abstract of judgment and deliver a copy to the Los Angeles County Sheriff.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.

We concur:


ARMSTRONG, J.


MOSK, J.

10