[Crim No. 851.   Fourth Dist.   Oct. 7, 1952.]

THE PEOPLE, Respondent, v. JOEL DANE JONES,
Appellant.

A. A. George and R. D. Love for Appellant.

Edmund G. Brown, Attorney General, and Alberta Gattone,
Deputy Attorney General, for Respondent.

GRIFFIN, J.—The information charges defendant in counts one and two, with violating section 496 of the Penal Code in this, that on December 7, 1951, he knowingly and unlawfully aided in concealing and withholding stolen property from the owner, i.e., a moving picture projector and an electric adding machine, knowing them to have been stolen. In count three it is charged that he possessed metal knuckles, in violation of the dangerous weapons control law (Pen. Code Appendix, pt. 3, § 1, p. 691), in count four with violating section 11476 of the Health and Safety Code in unlawfully possessing hypodermic syringe and needles without a proper written order, in count five with unlawfully having in his possession a narcotic, to wit, marijuana, in violation of section 11500 of the Health and Safety Code, and in count six with unlawfully giving away a narcotic substance, ''codeine'' without a written prescription. Defendant entered a plea of not guilty. A trial by jury resulted in a verdict of guilty on counts one to five, and not guilty on the sixth count.

Defendant's counsel raises no question as to the sufficiency of the evidence as to counts one, two, and three. The main attack is directed toward counts five and six.

■ The first proposition is that certain tests conducted by the chemist upon the substance found in the container on defendant's premises, as charged in count five, were insufficient as a matter of law to support a finding that the substance was marijuana, and that therefore the judgment on the fifth count should be reversed.

■ The next contention is that the evidence failed sufficiently to establish the corpus delecti as to the offense charged in count six before allowing a witness to testify that when the witness asked the defendant what became of the remainder of certain codeine tablets found in a box in defendant's home defendant told him ''that he (defendant) had given them to several fellows that he thought needed it''; and that even though he was acquitted on this count, the so-called admission of defendant so prejudiced him in the eyes of the jury that he did not have a fair trial on the remaining counts.

A brief relation of the facts shows that the defendant Joel Dane Jones, who also used the name James E. Brewer and various other pseudonyms, owned a pawnshop in Visalia. He and his wife lived in the rear of the premises. On December 6, 1951, defendant, together with a Mexican boy, walked into a drugstore in Visalia. The defendant made a purchase of

some cough medicine containing codeine. In signing the register defendant gave his name as James Brewer. The Mexican boy remained near a motion picture projector which was on the counter. At the time, he was wearing a sports jacket draped over his right shoulder so his right arm was completely hidden. Immediately after the defendant purchased the medicine the two walked out of the store. The clerk noticed that the motion picture projector was gone. She took down the license number of the automobile in which defendant and the Mexican boy were riding. The following day the police, with a search warrant, entered the premises of the defendant and found in the bathroom shower the motion picture projector which had been stolen (as charged in count one of the information). They also found upon the premises and under the bed the electric adding machine (described in count two of the information). It was identified by a witness as having been stolen from a stationery store in Hanford. During the search the officer found in a box in the bureau in the bedroom seven pairs of brass knuckles (as charged in count three.) Other items of property shown to have been stolen from business houses around Hanford were found. They also found on the shelf in the kitchen two tobacco cans. One of them contained fragments of marijuana (as charged in count five). Under the floor in the clothes closet was found a wicker basket containing an improvised hypodermic syringe, two hypodermic needles, a steel wire gadget used to clean the needles, and several small boxes such as are used for doctor's prescriptions, one of them containing 40 codeine tablets. The officers examined the arms of the defendant and found scars and scabs of the type left by the use of a hypodermic needle.

As to count four, it is pointed out by the attorney general that at the time of the alleged commission of the offense of unlawful possession of a hypodermic syringe and needle without a permit, section 11476 of the Health and Safety Code, under which defendant was prosecuted, had been previously repealed. (Stats. 1947, p. 2156, chap. 931, § 42.) Portions of that section were carried into the Business and Professions Code, division 2, chapter 9, section 4163, page 300. A conviction of a misdemeanor predicated upon a violation of this section as of December 7, 1951, was erroneous and accordingly must be reversed.

As to count five, although the quantity of alleged marijuana was not of great volume, apparently there was sufficient to procure a sample from which the chemists made

their analysis and test. A duly qualified expert testified that although he could not obtain any substance out of one can there were traces of marijuana in the other; that he made a microscopic and chemical test; that these tests were reliable and that in his opinion the one can contained marijuana; that the entire amount taken for the test was probably less than a quarter of a grain but that he only needed one-half of that amount.

It is defendant's position that the so-called "Duquesnois" test, made by the expert, would not differentiate between marijuana and other herbs. The witness testified that the microscopic and chemical test used in the instant case was the official test accepted by the State Division of Narcotic Enforcement and also the Federal Bureau of Narcotic Enforcement, and that in his opinion the substance was marijuana. On the face of the evidence there is no basis for defendant's contention that there was not sufficient evidence to submit the question of fact to the jury. This evidence, when considered in connection with the defendant's statement that about four or five weeks prior to the time of his arrest some Mexican fellow had brought in a pound of marijuana and had canned it up in his place of business and that if there were some it was probably some that he left, shows corroboration of the experts' testimony. Defendant offered no evidence to controvert the testimony of the expert relating to the contents of the can. We see no merit to the contention.

As to count six, since defendant was acquitted of the charge, it does seem that he should not now be heard to complain to any great extent. There was evidence that defendant was in possession of one box containing 40 codeine tablets which were apparently obtained by a doctor's prescription. There is also evidence of the presence of five other boxes containing prescription numbers beginning as of the date of August 3, 1951, and ending on December 4, 1951, with directions that the person named on the box take "two at bedtime" or "one or two every four hours." The doctor who furnished the prescription testified as to the dates and amounts of codeine furnished to defendant beginning January 1, 1951, and ending January 29, 1952. The attorney general properly argues that since the prescription for the box of 60 codeine tablets was filled on December 4, 1951, and the arrest was made on December 7, and since the use of 20 capsules would average 6⅔ grains per day, and since his previous average was only 3 tablets or 2.4 grains per day,

defendant, if he followed his average use of the drug, would not, himself, use 20 capsules and accordingly it might be reasonably inferred that he disposed of some tablets to others. His statement in reference to giving them away to others was properly admissible under the circumstances. (*People v. Corrales,* 34 Cal.2d 426 [210 P.2d 843]; *People v. Ives,* 17 Cal.2d 459 [110 P.2d 408].) We do not believe the admission of this testimony was prejudicial or that it would have influenced the jury in respect to the conviction on the remaining counts. No prejudicial error appears.

That portion of the judgment referring to count four is reversed. The remaining portion of the judgment and the order denying a new trial are affirmed.

Barnard, P. J., and Mussell, J., concurred.