[Crim. No. 9620.   Second Dist., Div. Four.   Dec. 7, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. R. C. WHITE, Defendant and Appellant.

Garland H. Puckett, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ben A. Borevitz, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, Acting P. J.—By information, defendant was charged with possession of heroin in violation of Health and Safety Code section 11500. A prior felony conviction of violation of section 11500 was alleged. In a trial by the court, after a jury waiver, defendant was found guilty and the prior conviction was found to be true. Motions for new trial and probation were denied and defendant was sentenced to state prison for the term prescribed by law. He appeals from the judgment of conviction.

On July 25, 1963, police officers, without a warrant, arrested defendant for suspicion of grand theft auto. The arrest was made at 2 a. m. in a one-bedroom apartment occupied by defendant and a woman named Helen Duvall. The police had received information from Leon DeVaughn that he believed defendant was "dealing in dope." DeVaughn stated that he lived at 1934 West Boulevard and that defendant was his tenant and lived in an apartment located on the same property at 1934½ West Boulevard. Just prior to the arrest, the arresting officers went to DeVaughn's residence. DeVaughn pointed out a car parked across the street which he said he had seen defendant driving. The officers examined the car and found that the front license plate was different from the back. Upon closer investigation they found that the letters on the front license plate had been

altered. A check with the Department of Motor Vehicles revealed that it was a stolen car.

The officers then went to defendant's apartment. Two officers went to the front door and two went to the back of the house. There were no lights on and it was quite dark. The officers were in plain clothes. One of the officers knocked on the front door. Defendant asked, ''Who's there?'' and the officers replied, ''Police.'' After a delay of approximately two or three minutes defendant opened the door ''and stepped back.'' Thereupon, the officers entered the darkened apartment and one of the officers found a light switch and turned on the lights. The doorway of the apartment entered into the bedroom. The officers saw that defendant was dressed only in his shorts. Miss Duvall was still in bed. One of the officers asked defendant if that was his car which was parked across the street and defendant replied ''No.'' The officer then informed defendant that he was under arrest for suspicion of grand theft auto.

During his conversation with defendant, the arresting officer observed ''fresh'' marks on defendant's arms which appeared to have been caused by hypodermic needle injections. After the arrest, the same officer observed a number of balloons on top of a dresser which he believed were used to carry narcotics. A search of the apartment uncovered more of these balloons in a dresser drawer. Under the dresser he found a spoon, burnt on the bottom, which in the officer's opinion had been used in preparing heroin for use. The bowl of the spoon contained a residue which the officer thought was heroin. In a clothes hamper, in the bathroom, another spoon was found. It also was burnt on the bottom and contained a residue. Several eyedroppers and a hypodermic needle were also found.

Over defendant's objection, that they were the product of an illegal search and seizure, the items seized in defendant's apartment were introduced in evidence at the trial.

It was stipulated that L. B. Miller was an expert forensic chemist; that he was called and testified that he examined the spoons found in defendant's apartment; that he found about 50 milligrams of powder residue in one spoon and about 10 milligrams in the other; that after examination of the powder residue he formed the opinion that the residue in the two spoons contained heroin.

Defendant raises two contentions in this appeal. First, he contends that the evidence seized in his apartment and

introduced at the trial was the product of an illegal search and seizure and should therefore have been excluded. Second, he maintains that his motion for a new trial should have been granted as the evidence was not sufficient to show that there was a known possession of a narcotic. We find both contentions to be well taken.

The prosecution did not establish that the officers had probable cause to arrest defendant when they entered his apartment and thus have not shown proper justification for the warrantless arrest and search. (*People* v. *Haven,* 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927].) A search without a warrant is proper if it is incident to a lawful arrest based on reasonable or probable cause to believe that the accused has committed a felony. (*People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823].) "Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. (*People* v. *Torres, supra,* 56 Cal.2d 864, 866.) The facts constituting reasonable cause for making an arrest must be known to the arresting officer before the arrest is made and the arrest cannot be justified by what a search following it reveals. (*People* v. *Privett,* 55 Cal.2d 698, 702 [12 Cal.Rptr. 874, 361 P.2d 602].)

The arrest in the present case cannot be justified solely on the basis of the information which the officers received from the informant, Leon DeVaughn, for he was previously unknown to them. The law is clear that information supplied by an informer of unknown reliability is not sufficient to constitute reasonable cause for arrest. (*People* v. *O'Neill,* 187 Cal.App.2d 732 [10 Cal.Rptr. 114]; *People* v. *Amos,* 181 Cal.App.2d 506 [5 Cal.Rptr. 451].)

The Attorney General, apparently conceding that the information supplied by the informer was not sufficient in and of itself, contends that it was independently corroborated by the observations of the police officers prior to the arrest.

Before arresting defendant, the arresting officers knew that a certain automobile parked across the street from defendant's residence was stolen, but the only knowledge they had connecting defendant with the automobile, other than its proximity to defendant's apartment—which we find to be insufficient under the circumstances—was the information supplied by the unreliable informer, DeVaughn. When

asked whether the automobile was his, defendant denied ownership. The information which the officers then possessed was merely sufficient to cast suspicion upon defendant. It provided reasonable grounds to permit the officers to go to defendant's residence to interview him, but not to arrest him for grand theft auto.

The Attorney General maintains that there was probable cause to arrest defendant for illegal possession of narcotics. It is argued that the information supplied by the informant, when considered along with what the officers observed when they entered the apartment, to wit, the marks on defendant's arms and the balloons on the dresser, supplied the necessary corroboration of the information given by the informant so as to make the officers' reliance upon such information reasonable. But the officers' observations took place after the officers' entry into defendant's darkened apartment. Probable cause must exist at the time of the entry. (*People* v. *Haven, supra,* 59 Cal.2d 713, 717.)

The prosecution also failed to establish that, under the circumstances of this case, there was an implied consent to entry. One officer had testified that defendant "stepped back" after he opened the door. Bearing in mind that the prosecution had the burden of showing consent (*People* v. *Haven, supra,* 59 Cal.2d 713), it is clear that no implied consent should be found here. A combination of factors dictate such reasoning. The entry was at 2 a. m.; the door to defendant's apartment opened into his bedroom; the woman living with defendant was in bed at the time; no lights were turned on at the time the door was opened; the officers were not in uniform; and defendant was not dressed.

Since the arrest was illegal, the search and seizure which followed were illegal. The evidence seized should have been excluded.

Defendant's second point is that the evidence was insufficient to show that he knowingly was in possession of a narcotic.

To sustain a conviction for possession of a narcotic it was incumbent on the prosecution to show (1) that a narcotic was present in defendant's apartment and (2) that defendant knew of its presence. (*People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433].)

The evidence offered by the prosecution to show the presence of heroin in defendant's apartment consists of two spoons seized in the apartment and the stipulated-to testimony

of a forensic chemist that he examined the spoons and found them to contain a powder residue which in his opinion contained heroin. Nearly the identical situation presented here was presented to this court in the recent case of *People* v. *Aguilar,* 223 Cal.App.2d 119, 122-123 [35 Cal.Rptr. 516] and, though decided subsequent to the trial in the instant matter, that decision is determinative of the question. In *Aguilar, supra,* we held that where a narcotic is imperceptible to the human eye and its presence, qualitatively and quantitatively, can be detected only with the aid of a forensic chemist and laboratory procedure, the evidence was not sufficient to sustain a conviction of known possession of a narcotic. The reasoning being that the ultimate test of known possession of a narcotic is not scientific measurement and detection, but rather the awareness in the defendant of the presence of the narcotic; that the presence of the narcotic must be reflected in such form as reasonably imputes knowledge to the defendant. (*People* v. *Aguilar, supra,* 223 Cal.App.2d 119, 122-123.)

The judgment of conviction is reversed.

Kingsley, J., and Frampton, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.