[Crim. No. 9380. In Bank. May 2, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. MANUEL V. LEAL, Defendant and Appellant.

Raymond Gloozman, under appointment by the Supreme Court, and Carlyle Michelman, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William L. Zessar, Deputy Attorney General, for Plaintiff and Respondent.

TOBRINER, J.—Manuel V. Leal was charged by information with possession of heroin. (Health & Saf. Code, § 11500.)

He waived a jury trial and the court found him guilty and sentenced him to the term prescribed by law. He appeals from the judgment, contending that the evidence is insufficient to show knowing possession of heroin. For the reasons discussed below, we believe the judgment must be reversed.

Late in the afternoon of April 8, 1963, Leal and his wife brought their young daughter, Martha, to the police station because she had run away from home. Outside the presence of her parents Martha spoke with Officer Stone and told him that she had left the house because her father had been taking narcotics and that he had hidden in the bathroom paraphernalia used by narcotics addicts. Officer Stone questioned Mrs. Leal about the presence of these objects, but she denied any knowledge of them. He asked her if he could go out and check the bathroom himself; she agreed and drove with him to defendant's home. The officer searched the bathroom, finding a wad of cotton, an eyedropper, a hypodermic needle, and a small spoon on which was encrusted one-half grain (approximately 32 milligrams) of crystallized substance later stipulated to contain heroin.

When Officer Stone returned to the station, he questioned defendant and placed him under arrest. The record does not indicate whether the officer advised defendant of his constitutional rights. To Officer Stone's question whether he knew of the items found in his bathroom, defendant asserted a total ignorance. Questioned as to whether he had ever used narcotics, he answered that he had done so three years previously. During this interrogation Officer Stone noticed for the first time that the pupils of defendant's eyes were pinpointed. Checking his arms, the officer observed scar tissue resembling hypodermic needle marks.

The present case requires us to determine whether the possession of implements which bear traces of a narcotic upon them can constitute the possession of the narcotic itself within the meaning of section 11500 of the Health and Safety Code. That statute prescribes heavy penalties for "every person who possesses any narcotic other than marijuana[1] except upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this State. . . ."

We sketch the development of the cases which interpret the statute in order to delineate, if possible, the test which the courts have evolved to define the proscribed possession. As we

[1]The possession of marijuana is covered by section 11530 which imposes less severe penalties.

shall point out, some courts, reading the word "any" in the statute as relating to the quantity of narcotic, as well as to its type, have held that the statutory ban extends to the possession of even the most minute traces. Other courts, as we shall show, have reversed convictions in such cases. In part, they have relied upon the fact that section 11500 proscribes only the *knowing* possession of narcotics.[2] These courts have held that the inference of knowledge cannot stand if the evidence discloses only minute quantities of narcotic residues, much altered from their original form. In part, too, they have evinced a fundamental doubt that the statute, properly construed, applies to the possession of narcotics so limited in quantity or so altered in form as to be useless for narcotic purposes.

In *People* v. *Salas* (1936) 17 Cal.App.2d 75 [61 P.2d 771], apparently the first case in point, the appellate court sustained a conviction under the then-prevailing statute,[3] which made it unlawful to "transport . . . or to have in possession any . . . morphine . . . except on the written order or prescription of a physician and surgeon. . . ." The evidence in that case established that the defendant had been arrested while driving an automobile, that the car contained a spoon which bore traces of morphine, that the officers had seen defendant "moving about" inside the car when they sounded their siren, and that the officers found a box containing tablets of morphine at the side of the road 120 feet from the point at which the siren had been sounded. The court affirmed the conviction, holding that the jury could properly find that defendant had thrown the box from the car. The court also observed, apparently by way of an alternative holding: "It will be noted . . . that it is unlawful to possess *any* morphine and no quantity is specified in order to bring one under the provisions of this act." (P. 78.)[4]

Upon a showing that a tobacco can in the defendant's possession contained an unspecified quantity of marijuana "fragments," the court in *People* v. *Jones* (1952) 113 Cal.App.2d 567 [248 P.2d 771], sustained a conviction for possession of marijuana. The court considered the quantity of the narcotic

---

[2]See, e.g., *People* v. *Gory* (1946) 28 Cal.2d 450, 456 [170 P.2d 433].

[3]Section 1 of the State Narcotics Act, as amended, Stats. 1935, ch. 813, p. 2204.

[4]In *People* v. *Aguilar* (1963) 223 Cal.App.2d 119 [35 Cal.Rptr. 516], then Presiding Justice Burke wrote: "One can only speculate as to whether the evidence in *Salas* would have been deemed sufficient had only the residue of the morphine on the spoon been found." (P. 121.)

only as it bore on the accuracy of the identification of the fragments.

The facts in *People* v. *Hyden* (1953) 118 Cal.App.2d 744 [258 P.2d 1018], disclose that a forensic chemist recovered 2 milligrams of morphine from implements in the defendant's possession. The defendant urged that the amount recovered was "insignificant" and could not sustain a conviction under section 11500. The court affirmed the conviction, noting: "There was no evidence as to the relative effect of two milligrams of morphine, or as to what amount of morphine would be sufficient to be considered of any significance, and it would seem that that matter is not one concerning which judicial notice could properly be taken." (P. 747.) Although the court affirmed the conviction, the nature of its response to the defendant's contention suggests receptiveness to the view that the statute has no application to chemical traces with a negligible narcotic potential.

In *People* v. *Anderson* (1962) 199 Cal.App.2d 510 [18 Cal. Rptr. 793], the defendant when arrested had in his possession a capsule containing 5 milligrams of narcotic substance. The defendant contended that this amount was too small to uphold a conviction for possession of narcotics, urging that "it would be impractical, if not impossible, to make any real use of the five milligrams or less involved in this case." As in *Hyden*, the court replied that defendant had introduced no *evidence* in support of his contention. The court also stated: "The cases hold that the statute does not require the possession of any specific quantity of narcotics."[5] (P. 520.)

The evidence in *People* v. *Marich* (1962) 201 Cal.App.2d 462 [19 Cal.Rptr. 909], consisted of "several powdery fragments" of heroin found in the folds of a piece of paper, together with a piece of cotton which contained heroin residue.

[5]For this proposition the court could cite only *Jones* and *Salas*, together with the decision in *People* v. *One 1959 Plymouth Sedan* (1960) 186 Cal.App.2d 871 [9 Cal.Rptr. 104]. The latter case arose under section 11610 of the Health and Safety Code which provides for the forfeiture of automobiles used in the narcotics trade. (See also *People* v. *One 1941 Buick Club Coupe* (1946) 72 Cal.App.2d 593 [165 P.2d 44]; *People* v. *One 1940 Buick Sedan* (1945) 71 Cal.App.2d 160 [162 P.2d 318], and *People* v. *One 1940 Buick 8 Sedan* (1945) 70 Cal.App.2d 542 [161 P.2d 264].) In these cases the courts have upheld forfeitures despite the fact that the quantities of narcotics recovered from the cars were extremely small. To the extent that these cases hold that the presence of narcotic traces provides a link in the proof that the cars have been used for the purpose proscribed by section 11610, they are without relevance to the issue presently before us. To the extent, however, that they suggest that such traces can serve as the basis of a conviction for knowing possession, they are disapproved for the reasons hereinafter stated in this opinion.

The court affirmed the conviction, observing that section 11500 makes it illegal "to possess '*any* narcotic other than marijuana.'" (P. 465; italics in the opinion.) Nevertheless, the court also laid stress upon the testimony of the People's expert witness that "it would be possible for the residue which was present in the cotton and the residue which was present in the folded piece of white paper could be utilizable or used by a person wishing to inject the remains that were present there." (P. 465.)

Perhaps the most unequivocal of the cases which have upheld convictions for the possession of minute quantities of residue is *People* v. *Thomas* (1962) 210 Cal.App.2d 553 [26 Cal.Rptr. 843]. In that case the defendant possessed two pieces of cotton which were found to bear traces of heroin residue. The court affirmed the conviction, holding that, "Any quantity that is susceptible of being identified comes within the proscription of the law." (P. 557.)[6]

Other courts, however, have held that the presence of minute quantities of narcotic debris or residue cannot ground an inference of knowing possession; they have expressed doubt that the statute, properly construed, proscribes the possession of such traces.

In the first of these cases, *People* v. *Cole* (1952) 113 Cal. App.2d 253 [248 P.2d 141], the evidence established the presence of a small quantity of marijuana debris. The District Court of Appeal reversed the conviction, holding that, "It strains credulity to believe that he [the defendant] knowingly left a single flake in his barber's kit or 12 scattered seeds in his car or a trace in an apparently empty tobacco can or knowingly transported these tiny quantities." (P. 262.)

The most probing of the cases in this line is *People* v. *Aguilar* (1963) 223 Cal.App.2d 119 [35 Cal.Rptr. 516]. There the police found in the defendant's possession a narcotics injection outfit which included two spoons bearing deposits of heroin. In reversing the conviction, the court placed primary emphasis upon the fact that the heroin on the spoons appeared

---

[6] In *People* v. *Wilson* (1965) 235 Cal.App.2d 266, 276-278 [45 Cal.Rptr. 267], the court drew upon these cases by analogy for its conclusion that no minimum quantity of narcotic is required to sustain a conviction under Health and Safety Code section 11501 relating to the transportation or sale of narcotics. In that case, however, the court also laid stress upon the language of the statute which, as quoted by the court, proscribes the transportation or sale of "any narcotic. . . ." As noted earlier, the complete statutory language is "any narcotic other than marijuana," a phraseology which leaves unresolved the question whether the word "any" refers to the quantity of narcotic present or only to its type.

in the form of crystalline encrustations, rather than in its normal powdery form. The court distinguished prior cases in which the narcotic, although small in quantity, retained its customary appearance. It also made note of the fact that in *Marich*, "the residue in the bindle and cotton . . . could be used by a person wishing to inject the remains found to be present." (P. 121.) The court concluded: "Here, we may infer . . . that heroin in powder form had first been liquefied and the resultant emulsion drawn from the spoons by means of the hypodermic needles and used for injection purposes. What remained in the bottom of the spoons was residue which was in a completely different form from that of heroin powder. The crystalline incrustations on the spoons could remain in that state indefinitely. . . . Any nonscientifically trained person, albeit an addict, observing the spoons . . . would have been unable to detect the presence of heroin since neither powder nor liquid remained. It is not scientific measurement and detection which is the ultimate test of the known possession of a narcotic, but rather the awareness of the defendant of the presence of the narcotic. Guilt or innocence on a charge of illegal possession may not be determined solely by the skill of the forensic chemist in isolating a trace of the prohibited narcotic in articles possessed by the defendant. As forensic science, measuring devices and techniques improve, smaller and smaller amounts of residue are required for the chemist to detect the presence of the narcotic. The presence of the narcotic must be reflected in such form as reasonably imputes knowledge to the defendant." (Pp. 122-123.)

Subsequent cases have amplified the *Aguilar* holding. In *People* v. *Melendez* (1964) 225 Cal.App.2d 67 [37 Cal.Rptr. 126], the defendant was found in possession of a pipe, the bowl of which contained a gummy material identified by a forensic chemist as the residue of the "active ingredients" of marijuana. The court reversed the conviction, observing that: "[W]hat remained . . . was a gummy black material in a completely different form than that of the vegetable material recognizable as marijuana. Like the crystalline incrustations on the spoons in *Aguilar*, the gummy material attached to the pipe in the instant case could have remained there indefinitely in that state, long after.the marijuana had been smoked. It is apparent, moreover . . . that a non-scientifically trained person could not detect the presence of marijuana even by observing the black material in the bowl of the pipe." (P. 72.)

The defendant's narcotics outfit in *People* v. *White* (1964) 231 Cal.App.2d 82 [41 Cal.Rptr. 604], included two spoons

which yielded a total of 60 milligrams of "powdery residue" found to contain heroin. The court reversed the conviction on the authority of *Aguilar.*

The most recent case in point, *People* v. *Sullivan* (1965) 234 Cal.App.2d 562 [44 Cal.Rptr. 524], contains an extensive treatment of the question presently before us. There, as in *Aguilar, White* and the instant case, the spoons in the defendant's narcotics outfit yielded traces of heroin. The court reversed the conviction, stating that *Aguilar* clearly establishes that knowing possession cannot be predicated upon the presence of such traces and concluding that section 11500 has no application to the possession of such minute quantities.

The court in *Sullivan* explained: "[T]he criminal law is engaged in a continuous process of drawing lines, and in the enforcement of offenses involving possession of narcotics fixed lines appear to be uavoidable. [Citations.] To this end we believe the Legislature has established helpful guidelines in distinguishing the crimes of possession of narcotics paraphernalia (Health & Saf. Code, § 11555) and of being under the influence of narcotics (Health & Saf. Code, § 11721), both misdemeanors, from the more serious crime of possessing the narcotic itself (Health & Saf. Code, § 11500), a felony. This distinction is pertinent to the present case where the evidence shows that defendant was in possession of a narcotics kit and under the influence of narcotics; but does not support the charge that he knowingly possessed heroin.

"We conclude that possession of a minute crystalline residue of narcotic *not intended for consumption or sale and useless for either of these purposes* is insufficient evidence to sustain a conviction for known possession of a narcotic." (P. 565; italics added.)

The Attorney General seeks to avoid the force of these decisions by urging that defendant's knowledge of the character of the residue can be established by circumstantial evidence. He notes that the record in the present case contains evidence which tends to establish that defendant was a current user of narcotics, and hence familiar with the appearance of heroin in every phase of its preparation and use. In light of these facts, he urges, the trial court could properly find that defendant knew of the narcotic content of the residue on the spoon.

The argument of the Attorney General fails to take account of the fact that similar, perhaps even stronger, circumstantial evidence was present in *Aguilar* and the cases which have followed it. In *Aguilar* itself, the defendant admitted that he was currently using heroin and acknowledged that the objects

which bore the residue were part of his "outfit." In *Melendez*, the deposit-bearing pipe comprised part of an extensive narcotics outfit; the expert witness also testified that the pipe bore the characteristic odor of marijuana. In *White*, the defendant when arrested had "fresh" needle marks on his arm and had previously been convicted under section 11500. In *Sullivan*, the defendant acknowledged that the spoons were part of his narcotics outfit, and the evidence established that the defendant was in a state of narcosis when arrested. In none of these cases did the courts consider that such circumstantial evidence was sufficient to support an inference that the defendant knew of the presence and narcotic character of the residues. In the instant case, it appears that the circumstantial evidence of knowledge is, if anything, less compelling than that which appeared in *Aguilar* and its progeny.[7]

Moreover, we must consider the proposition, adumbrated in earlier cases, and made the basis of decision in *Sullivan*, that section 11500 is to be confined to its proper place in the statutory scheme. That section is but part of an extensive body of narcotics control legislation which proscribes all phases of the importation, transportation, preparation, sale, possession and use of narcotics. The Legislature has established many categories of offenses, to which it has annexed punishments which vary widely in degree. In construing section 11500, we recognize the need to preserve for it a separate and independent place in the statutory plan and one which harmonizes with other parts of that plan. In so doing, we cannot overlook the fact that the possession of minute traces of narcotics residue poses, if anything, *less* danger of future harm and is less probative of an intent to use narcotics in the future, than the possession of narcotics implements, an offense which the Legislature has denominated a misdemeanor. (Health & Saf. Code, § 11555.)

The most compelling explanation for the vast disparity between the punishments annexed to sections 11500 and 11555 is that section 11500 applies to those who by their possession of

[7]The Attorney General lays great stress on the fact that the residue upon defendant's spoon was visible. We doubt that this fact distinguishes the present case from any of those in the *Aguilar* line. In *Aguilar*, the court did state that "the narcotic was imperceptible"; however, in the context of the decision, this statement appears to refer to the court's conclusion that the heroin was no longer recognizable as such, rather than that the residue was invisible. In *Melendez* and *White*, it seems clear that the residue was visible, albeit unrecognizable as narcotics, and in *Sullivan* the court expressly so states.

narcotic substances have created a potentiality for future use or sale. Whether a defendant who possesses only minute traces of narcotics residue creates such potentiality is purely a question of fact which the prosecution must prove.

We do not say, however, that the discovery of traces of narcotics in a defendant's possession is without legal significance. Clearly, the presence of those traces may serve as evidence in the proof of many types of narcotics offenses.[8]

██ We conclude that the statutory differentiation of the various crimes as well as the history of the cases culminating in *Sullivan* show that in penalizing a person who possesses a narcotic the Legislature proscribed possession of a substance that has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such substance. Hence the possession of a minute crystalline residue of narcotic useless for either sale or consumption, as *Sullivan* points out, does not constitute sufficient evidence in itself to sustain a conviction. Since in the present case the prosecution proved no more than defendant's possession of traces of narcotics and did not show that such residue was usable for sale or consumption, we remit it to the trial court for the purpose of ascertaining whether or not such factual elements were present.[9]

The judgment is reversed.

Traynor, C. J., Peters, J., Peek, J., Mosk, J., and Burke, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Justice Lillie in the opinion prepared by her for the District Court of Appeal in *People* v. *Leal* (Cal.App.) 46 Cal.Rptr. 78.

---

[8]The presence of such traces would, for example, often be necessary to establish that otherwise innocent-appearing implements comprise a narcotics injection outfit.

[9]In view of the disposition which we make of this matter, wo do not reach defendant's alternative contentions that the introduction of his statements to the police requires reversal under *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 369], and that the evidence introduced against him was the fruit of an unlawful search and seizure.