Filed 3/14/14  P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058775 |
| v. | (Super.Ct.No. FWV1202522) |
| DANIEL ANTHONY HERNANDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Stanford E. Reichert, Judge.  Affirmed as modified.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Daniel Anthony Hernandez appeals from a judgment of conviction of possession of a controlled substance and possession of a syringe. (Health & Saf. Code, §§ 11377, subd. (a); 11364.1, subd. (a).) His primary contention on appeal is that the evidence was insufficient to establish either possession, that the substance was a "usable quantity," or that he was aware that he possessed a "usable quantity." We find these contentions meritless and affirm the judgment. He also argues that the trial court improperly imposed a $200 criminal laboratory fee when it should have been only $50. The People concede this point.

STATEMENT OF FACTS

On October 4, 2012, Ontario police officer Wes Willemstyn made a traffic stop of a vehicle driven by defendant. Defendant informed the officer that he lived in a detached structure in the backyard of the home in which his parents resided. No one else resided in the structure, which was also described as a small guest house. Defendant also told the officer that his personal property was in the guest house and that no one else kept property there. Defendant had the only key.

The officer and a back-up officer searched the guest house.[1] In the pocket of a shirt hanging in the closet Officer Willemstyn found a syringe containing a clear liquid substance which, based on his training and experience, he believed might be liquefied methamphetamine. If it proved to be methamphetamine, he believed it was a usable

---

[1] Defendant was on probation and subject to a search condition, but to avoid prejudice the jury was not informed of this fact. The jury was simply instructed that it must assume that the search was lawful.

quantity. He explained that if a syringe contained merely residue from use, it was usual for the plunger to be completely depressed rather than, as here, drawn back above the liquid. The officer also observed that the other clothing in the closet was of a similar size, and it was all men's clothing.

Officer Willemstyn also testified that when defendant saw that the officer had the syringe, he began to tremble and appeared to panic. He asked the officer if he was going to be charged with possession of the syringe, and the officer confirmed that he would be and that he might also be charged with a controlled substance offense, depending on the results of testing the liquid. Defendant reacted to this by beginning to cry and admitting that he had a serious drug problem.

Back at the police station, Officer Willemstyn performed a preliminary test on the liquid in the syringe which indicated that it was methamphetamine. The remaining liquid was transferred to a glass vial[2] and sealed for formal testing.

The only other witness (defendant did not testify) was the criminalist, who identified the liquid as containing methamphetamine and also testified that the reactions were not difficult to analyze, as might have been the case with a very diluted sample. She also testified that the amount of the sample was 0.16 milliliters.

---

[2] We have corrected the spelling of "vile" given in the transcript.

DISCUSSION

In considering a claim of insufficient evidence, the reviewing court's task is simply to determine from the record whether there is evidence which is reasonable, credible, and of solid value in support of the judgment.  (*People v. Watkins* (2012) 55 Cal.4th 999, 1019.)  The fundamental issue is not whether the appellate court believes that the evidence establishes guilt beyond a reasonable doubt, but whether *any rational trier of fact* could have found the elements of the crime true beyond a reasonable doubt.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 317-320; *People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

Defendant first[3] argues that the evidence was not sufficient to prove that the amount of methamphetamine in the syringe was a "usable amount."  This term is defined simply as contraband which is in a form and quantity which makes it possible for it to be used in the manner commonly employed, as distinguished from a "blackened residue or useless trace."  (*People v. Rubacalba* (1993) 6 Cal.4th 62, 66.)  It is not necessary that the amount of contraband be sufficient, either in size or quality, to produce any narcotic effect.  (*Id*. at p. 65.)  Officer Willemstyn testified that according to his training and experience, the liquid in the syringe appeared to be a usable quantity, and this was corroborated by his testimony that the plunger had not been fully depressed—that is, that complete depression of the plunger would have resulted in the injection of some of the

_____

[3]  Actually, this is the second prong of his argument, but it makes more sense to consider it first.

4

liquid into the user's body.  This constitutes substantial evidence that the amount of methamphetamine-containing liquid was "usable."

Defendant argues that the "usable amount" finding was based merely on the fact that the syringe contained a "testable" amount, citing *People v. Leal* (1966) 64 Cal.2d 504, 509 which notes that as forensic science advances, smaller and smaller real amounts of contraband may be detected by the scientist.  But *Rubacalba* stresses that purity or concentration is not relevant to the issue of whether an amount is "usable."  As we discussed above, the evidence here showed an amount of liquid that could be injected. That was "usable."

Defendant then argues that the evidence was not sufficient to establish that he had *knowledge* that the amount was usable.  *Rubacalba* does acknowledge that the purity of a substance may be relevant to this point, although it finds that the form of the contraband may also be relevant.  (*Rubacalba*, *supra*, 6 Cal.4th at p. 67.)  The example given is that where a "microscopic amount of cocaine" is found included in a package of talcum powder, such circumstances, the court commented, do not strongly suggest that the defendant knew the amount was usable.

This case is far different.  The methamphetamine was not found, for example, diluted in a bottle of mouthwash.  It was contained in a syringe which is itself illegal to possess.  The syringe was in a pocket of a shirt in defendant's home.  Although in his reply brief defendant asserts that his possession of the shirt was merely "constructive," implying that the shirt might have belonged to someone else and wound up in his closet

5

without his knowledge of its contents, he told Officer Willemstyn that no one else kept property in the guest house. To suppose that a third party, whose very existence is not suggested by the record, placed either the shirt and syringe, or just the syringe in the closet is the sheerest speculation. On the contrary, the inferences that the shirt belonged to defendant and that he was aware of the presence of the syringe in his own shirt are virtually inescapable. Furthermore, this conclusion is also corroborated by his extreme anxiety when the syringe was discovered and his admission that he has a "drug problem," indicating his familiarity with substances and paraphernalia. As our discussion above establishes, the amount was clearly "usable" in the legal meaning of the term and would clearly have been considered such by an experienced "user."

Finally, the trial court imposed a $200 criminal laboratory fee pursuant to Health and Safety Code section 11372.5. However, that section only mandates a fine of $50 for "each separate offense" listed in subdivision (a). There is no provision for increasing this amount. As defendant was convicted of only one listed offense—that under Health and Safety Code section 11377, subdivision (a)[4]—the fine should be reduced to $50, and we will so order. (See *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1519.)

---

[4] Health and Safety Code section 11372.5, subdivision (a), also references the possession of drug paraphernalia offense but lists it as section 11364. However, this offense is currently described in section 11364.1, operative until January 1, 2015. Section 11364 is currently inoperative until that date. In other words, the section 11364.1 conviction is not listed in section 11372.5 because that statute was not changed to reflect the renumbering of the paraphernalia statute.

6

DISPOSITION

The judgment is modified to reflect a fine under Health and Safety Code section 11372.5 in the sum of $50, and is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>HOLLENHORST</u>
Acting P. J.

We concur:


<u>McKINSTER</u>
      J.


<u>KING</u>
      J.