Filed 7/23/15  P. v. Singleton CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B257405 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA102861) |
| v. | |
| STEVIE MARK SINGLETON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Douglas Sortino, Judge.  Affirmed.

Greg Demirchyan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, Wyatt E. Bloomfield, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant and appellant Stevie Singleton (defendant) guilty of sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a)) (count 1) and possession for sale of a controlled substance (Health & Saf. Code, § 11351) (count 2).[1] On appeal, defendant contends that insufficient evidence supports his convictions for sale of a controlled substance and possession for sale of a controlled substance. Defendant also asserts that the trial court erred prejudicially by admitting expert narcotics-jargon testimony without qualifying the testifying witness as an expert. If we conclude that his challenge to the admission of expert testimony was forfeited by defense counsel's failure to object in the trial court, then defendant contends that he received ineffective assistance of counsel. We affirm.

## FACTUAL BACKGROUND

On August 16, 2013, City of Pomona Police Department Officer Jesus Cardenas was working on a special two-week assignment to the U.S. Marshal Service. The assignment entailed conducting undercover narcotics purchases as part of a task force. An 11-year veteran of the Pomona Police Department, Officer Cardenas had been a police officer for 16 years. Officer Cardenas had attended two 40-hour training courses covering drug abuse recognition and narcotics sales, packaging, use, and influence. He also had experience working in the major narcotics unit, had conducted 28 undercover narcotics purchases, and had authored two narcotics search warrants resulting in home confiscations. During his tenure with the Pomona Police Department, Officer Cardenas had conducted thousands of narcotics sales as an undercover police officer.

About 4:07 p.m. on August 16, 2013, Officer Cardenas, dressed in civilian attire, drove his undercover vehicle into the parking lot of the 99 Cent Store on Holt Boulevard near Paloma Drive in Pomona to purchase narcotics. There were five individuals in the area around his truck when he arrived. Two of them subsequently approached him.

---

[1] Defendant was tried before the same jury as co-defendant Robert Johnson. Johnson is not a party to this appeal.

2

Based on his training and experience with undercover operations, Officer Cardenas concluded that the individuals who did not approach appeared to be acting as lookouts. Officer Cardenas explained that narcotics sales were often conducted through a "team approach" because those selling narcotics "try not to keep multiple items [i.e., narcotics and money] on their person."

Defendant was one of two individuals who approached Officer Cardenas and initiated the following conversation:

"[Defendant]: What's up?

"[Officer Cardenas]: I'm looking for a dub.[2]

"[Defendant]: What you want?

"[Officer Cardenas]: Rock.[3]"

Defendant responded to this conversation by using his cell phone to initiate what Officer Cardenas assumed was a possible transaction. Subsequently, defendant approached co-defendant Johnson, who was among the men standing outside the 99 Cent Store. Defendant and Johnson had approximately a five second conversation before walking over to a minivan parked outside the store. Johnson entered the van and closed the door, but defendant remained outside. Officer Cardenas, who did not see anyone else inside the van or approach the van, concluded that defendant was acting as a lookout.

When Johnson opened the minivan's door, defendant walked over to Johnson, and Officer Cardenas observed a hand-to-hand transaction between defendant and Johnson. Officer Cardenas described the transaction: "Johnson's right clenched fist met with [defendant's] open palm and a handshake or similar to a handshake occurred and Johnson released. He had an open hand now and [defendant] had the clenched fist."

Following the transaction, defendant, keeping his arm close to his body, walked back to Officer Cardenas and opened his palm, producing $20 worth of narcotics. Officer

---

**2** Officer Cardenas explained the etymology of the word "dub," and that it is "common street language for $20 worth of narcotics."

**3** Officer Cardenas explained that "rock" is street slang for rock cocaine.

Cardenas handed defendant a $20 bill that the U.S. Marshal Service had given him, and defendant handed the officer the narcotics. The narcotics were two "off-white colored rocks," each in a separate package of cellophane, with each rock about the size of a pencil eraser. Officer Cardenas believed the rocks were consistent with two "dimes," or $10-sized rocks, of cocaine. According to Officer Cardenas, the cocaine rocks he received were "typical use amounts" for personal use. He opined that each rock could be "hit a few times," meaning that each rock could be used a few times.

Officer Cardenas estimated that about four minutes elapsed from when he specified that he wanted rock cocaine to when defendant handed him the narcotics. After placing the narcotics on the front seat, Officer Cardenas drove away, called Officers Edgard Padilla and Brad Paulson to notify them that a transaction had occurred, and described the van and the men to be taken into custody. After Officers Paulson and Padilla took into custody individuals matching the men Officer Cardenas described, Officer Cardenas slowly drove by the scene in his undercover vehicle to confirm visually the identification of the detained individuals. Officer Padilla searched defendant after detaining him and found no money. When the arresting officers searched Johnson, however, they recovered $541 in U.S. currency, including some $20 bills. Because Officer Cardenas continued on with his U.S. Marshal Service detail after identifying the men in custody and did not return to the scene, he did not know what happened to the $20 bill that he used to purchase the narcotics from defendant.

Officer Cardenas suggested, based on his experience conducting undercover operations and narcotics investigations, that defendant likely would not have maintained possession of the $20 from the transaction with Officer Cardenas so defendant could claim that any drugs found on his person were for personal use rather than for sale. Officer Cardenas conceded that a search of an individual that resulted in recovery of both money and narcotics would solidify the prosecution's case for possession for sale.

Robert Takeshita, a senior criminalist with 31 years of experience working for the Los Angeles County Sherriff's Department Crime Lab, had qualified as a controlled substances expert in municipal, superior, and federal courts, and had tested substances for

4

narcotics on a daily basis during the last 20 years of his tenure with the crime lab. Takeshita analyzed the substances Officer Cardenas purchased from defendant. He testified that the crime lab received two items of sealed evidence, each of which contained a solid substance that weighed 0.09 grams. Takeshita conducted two separate chemical tests on each of the two solids: a preliminary cobalt spot test to determine the type of chemical compound of each solid, and a confirmatory infrared spectrum test to determine the chemical structure of each compound. Both solid substances tested positive for cocaine base.

## DISCUSSION

### I.      Sufficiency of Evidence

Defendant contends that his convictions for sale of a controlled substance and possession for sale of a controlled substance each require a finding that he possessed a usable amount, and that insufficient evidence supports the jury's finding of a usable amount. Assuming, without deciding, that both counts require possession of a usable amount, sufficient evidence supports the jury's finding and defendant's convictions.

#### A.      *Standard of Review*

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 [82 Cal.Rptr.3d 323, 190 P.3d 664].) We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781].) In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier

5

could reasonably deduce from the evidence.' (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].)" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)

### B.      *Application of Relevant Principles*

To sustain a conviction under Health and Safety Code section 11351 – possession of a controlled substance for sale – the prosecution must prove that "1. The defendant possessed a controlled substance; [¶] 2. [t]he defendant knew of its presence; [¶] 3. [t]he defendant knew of the substance's nature as a controlled substance; [¶] 4. [w]hen the defendant possessed the controlled substance, he intended to sell it; [¶] 5. [t]he controlled substance was [cocaine]; [¶] AND [¶] 6. [t]he controlled substance was in a usable amount." (CALCRIM No. 2302; *People v. Montero* (2007) 155 Cal.App.4th 1170, 1175-1176.) The only element defendant contests on appeal is the last one, which he says requires that the controlled substance be in a usable amount.[4]

Whether the substance "exists in usable quantity is a factual question" for the jury, and the burden rests with the prosecution to prove that the narcotics possessed by defendant constituted a usable amount. (*People v. Simmons* (1971) 19 Cal.App.3d 960, 966, fn. 2; *People v. Leal* (1966) 64 Cal.2d 504, 512 (*Leal*).) In *People v. Karmelich* (1979) 92 Cal.App.3d 452, 456, the court clarified the definition of a usable amount by setting the threshold for a usable amount at anything that exceeds "a residue unusable for any purpose." When the record contains no information suggesting that the substance in question is only a useless trace or residue, and there is testimony supporting a finding of a usable amount of a controlled substance, sufficient evidence exists to support a usable amount. (*People v. Simmons, supra*, 19 Cal.App.3d at pp. 965-966 [holding that sufficient evidence supported a usable amount of heroin based on a police officer's testimony that a balloon contained a "brownish powdery substance," a "stipulation that

---

[4]      The parties disagree on whether defendant's conviction on count 1 – sale of a controlled substance in violation of Health and Safety Code section 11352 – requires a finding that he possessed a usable amount. Even if count 1 requires a finding that defendant possessed a usable amount, substantial evidence supports the jury's finding that there was a usable amount.

the powder in the balloon was heroin," and the testimony of a station attendant that he "thought [the balloon] contained something," when nothing in the record suggested a useless trace or residue].)

To support a finding of a usable amount, the prosecution is not required to demonstrate that the substance is of a minimum purity or of sufficient potency to produce a narcotic effect. (*People v. Rubacalba* (1993) 6 Cal.4th 62, 66.) California courts have rejected claims that a conviction for possession of a controlled substance requires "a chemical analysis of the substance sufficient to determine the weight or volume" of the controlled substance present in the material at issue. (*People v. Camp* (1980) 104 Cal.App.3d 244, 248 [rejecting the defendant's claim that her conviction for PCP possession required a chemical analysis of the substance sufficient to determine the weight or volume of the PCP in her cigarette]; *People v. Carmical* (1968) 258 Cal.App.2d 103, 108 ["We do not take the *Leal*[, *supra*, 64 Cal.2d 504,] decision to mean that whenever heroin is possessed in a form that is not chemically pure it is incumbent upon the prosecution to introduce in evidence the results of a quantitative chemical analysis"].) In *People v. Stafford* (1972) 28 Cal.App.3d 405, 413 to 414, the court held that a police chemist's testimony that four capsules found in the defendant's possession contained three to five percent heroin was sufficient to establish "a prima facie case that defendant possessed a usable quantity," even though the chemist did not weigh the capsules.

Defendant argues that the prosecution did not present evidence that the substance was in a usable amount rather than "residue ready to be discarded." Defendant's argument is without merit because it focuses only on the criminalist's testimony, and ignores Officer Cardenas's testimony that the cocaine rocks were usable. Although the criminalist did not testify regarding the amount or purity of the cocaine in the rocks or how the substance might be used, he testified that each rock had a net weight of 0.09 grams, and both rocks tested positive for cocaine base. This testimony, when considered with Officer Cardenas's testimony that each rock was the size of a pencil eraser, supports a finding of a usable amount. (*People v. Simmons, supra*, 19 Cal.App.3d at pp. 965-966.)

7

Based on his training and experience, Officer Cardenas opined that the rocks he received were typical use amounts for personal use, and that a user could "hit [each rock] a few times," depending on the severity of the user's habit. This testimony supports the finding that the cocaine rocks defendant sold to Officer Cardenas were usable, and the record contains no information that suggests the rocks were a useless trace or residue. The prosecution thus presented evidence beyond mere "chemical analysis" that directly supports the usability of the substance defendant sold to Officer Cardenas. A reasonable juror could have found, based on the criminalist's testimony, that the substance defendant sold to Officer Cardenas was cocaine, and, based on Officer Cardenas's testimony, that it was a usable amount.

## II. Officer Cardenas's Testimony

### A. *Officer Cardenas's Qualification as an Expert*

Defendant asserts that the trial court abused its discretion when it allowed Officer Cardenas to testify regarding the meaning of "coded drug language without qualifying him as an expert witness." By failing to object to Officer Cardenas's narcotics-jargon testimony during trial, defendant has forfeited this assertion. Moreover, even if defendant had not forfeited this claim, it is without merit.

#### 1. Forfeiture

A timely objection is generally required to preserve evidentiary objections for appeal. (Evid. Code, § 353, subd. (a); *People v. Dowl* (2013) 57 Cal.4th 1079, 1087 ["We have long and repeatedly held that a defendant who fails at trial to object that a witness lacks the qualifications to render an expert opinion may not on appeal contest the opinion's admissibility. [Citations.]"].) The forfeiture rule "ensures that the party offering the evidence has an opportunity to address any objection and '"prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error."' [Citation.]" (*People v. Dowl*, *supra*, 57 Cal.4th 1079, 1087-1088.)

8

A defendant's failure to object to foundation for expert testimony precludes review of an inadmissibility claim on appeal. (*People v. Seaton* (2001) 26 Cal.4th 598, 642-643.) Thus, defendant has forfeited appellate review of his claim that Officer Cardenas's testimony was inadmissible because he failed to raise an objection at trial.

        2.      Merits

Even if the issue was not forfeited, defendant would not prevail on the merits. "The trial court is given considerable latitude in determining the qualifications of an expert and its ruling will not be disturbed on appeal unless a manifest abuse of discretion is shown." (*People v. Kelly* (1976) 17 Cal.3d 24, 39.) Under Evidence Code section 720, "[a] person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) An expert's opinion testimony is limited to "subject[s] that [are] sufficiently beyond common experience that the opinion of an expert would assist the trier of fact[,]" and it must be "based on matter (including his special knowledge, skill, experience, training, and education) . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion." (Evid. Code, § 801, subds. (a), (b).) Police officers with significant "training in and experience with narcotics" have been qualified as "expert[s] in the field of narcotics." (*People v. Wesley* (1990) 224 Cal.App.3d 1130, 1135, 1146 [holding that a police officer was properly qualified as an expert in the field of narcotics and could give opinion testimony that a solid substance involved in an undercover transaction was cocaine when he had attended two 40-hour narcotics training courses, had experience writing search warrants for cocaine violations and making arrests, and had experience purchasing and selling cocaine undercover].) ""'"Where a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility."'" [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 321-322.)

Defendant's contentions that a witness's "on-the-job experience isn't enough" to qualify the witness as an expert on narcotics jargon, and that the witness must also "explain his applied methodology" to qualify as an expert lack support. Defendant has neither identified any appropriate methodology for interpreting drug jargon nor cited any binding authority in support of his assertion.[5] Officer Cardenas's experience with and training in narcotics transactions qualified him as an expert in the field of narcotics. (*People v. Nunn* (1956) 46 Cal.2d 460, 466-467 [holding that a police officer's knowledge, "gained through experience . . . and study, not possessed by the average man[,]" qualified him as an expert on the causes of narcotics addiction].) At the time of the incident, Officer Cardenas had 16 years' experience as a police officer, had attended two 40-hour courses on drug abuse recognition and sales, packaging, use, and influence, had worked the major narcotics unit, and had participated in thousands of narcotics sales as an undercover police officer. He had also authored two narcotics search warrants resulting in home confiscations for narcotics sales and participated in 28 previous undercover narcotics buying operations. By concluding that Officer Cardenas was not qualified to testify as an expert, defendant discounts the officer's experience with narcotics transactions, which gave the officer knowledge beyond common experience and qualified him as an expert in the field of narcotics. The trial court did not commit

---

[5]     Defendant has cited one federal case from the Ninth Circuit finding error when "[t]he district court relied solely on [an officer's] general qualifications without requiring the government to explain the method [the officer] used to arrive at his interpretations of words he had never encountered before" in the narcotics context. (*United States v. Hermanek* (9th Cir. 2002) 289 F.3d 1076, 1094.) "Decisions of lower federal courts interpreting federal law are not binding on state courts." (*People v. Williams* (1997) 16 Cal.4th 153, 190.) The court in *Hermanek* held the error to be harmless and limited its holding, noting, "We do not hold that a government expert . . . can never be qualified to interpret coded drug conversations using words and phrases experienced for the first time in the prosecution at issue[,]" and that "[t]he advisory committee's note to Rule 702 . . . approves such expert testimony where the 'method used by the agent is the application of extensive experience to analyze the meaning of the conversations.'" (*Hermanek, supra*, 289 F.3d at p. 1096.)

prejudicial error when it admitted Officer Cardenas's testimony without qualifying him as an expert.

### 3. Prejudice

Even if the trial court erred in admitting Officer Cardenas's testimony, any error was harmless. "The erroneous admission of expert testimony only warrants reversal if 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (*Watson*); see also *People v. Venegas* (1998) 18 Cal.4th 47, 93 [74 Cal.Rptr.2d 262, 954 P.2d 525] [applying *Watson* standard to the erroneous admission of expert testimony].)" (*People v. Prieto* (2003) 30 Cal.4th 226, 247.)

And if the trial court excluded Officer Cardenas's expert testimony and allowed only his percipient lay testimony, it is not reasonably probable that the jury would have reached a result more favorable to defendant. A reasonable jury would have relied on the criminalist's testimony that the solid substances received in the crime lab tested positive for cocaine base, and on Officer Cardenas's lay testimony that he was working undercover conducting narcotics purchases in one of the Pomona Police Department's "known narcotics areas." Without Officer Cardenas's expert testimony as to the meaning of "dub" and "rock," the jury would still have heard his testimony that he stated he was "looking for a dub" and wanted "rock," and that defendant sold him two solid substances, each the size of a pencil eraser, in response to his request. Based on this evidence from Officer Cardenas and the criminalist, the jury would reasonably have concluded that defendant possessed narcotics and sold them to Officer Cardenas. The lack of testimony regarding the meaning of the terms "dub" and "rock" would not likely have changed the outcome as is required for a finding of prejudicial error under *People v. Watson, supra*, 46 Cal.2d 818. The jury likely would have figured out the meaning of those terms.

### B. *Defendant's Instructional Error Claim*

Defendant also contends on appeal that the trial court erred when it failed to instruct the jury *sua sponte* on the differences between Officer Cardenas's expert and lay

testimony. A court has a *sua sponte* duty to "instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) Defendant cites dicta in *People v. Housley* (1992) 6 Cal.App.4th 947, 958 for the assertion that expert testimony, in particular, "may require special treatment because jurors may too readily accept expert or scientific evidence." The trial court did not have a *sua sponte* duty to give a special instruction, in addition to CALCRIM No. 332,[6] to aid the jury in evaluating Officer Cardenas's testimony. The statement defendant cited is a paraphrasing of language in *People v. Reeder* (1976) 65 Cal.App.3d 235, 241, which held that the trial court erred when it failed to advise the jurors that they were "not bound to accept the opinion of any expert as conclusive" or that they "may . . . disregard any such opinion, if it shall be found by them to be unreasonable," as Penal Code section 1127, subdivision (b) requires. By giving CALCRIM No. 332 in this case, the trial court properly instructed the jury on the appropriate weight to assign to expert testimony, and instructed that the jury was permitted not to believe an expert's testimony if it did not find the testimony credible. The trial court thus fulfilled its duty to instruct the jury on the relevant principles of law and was not required to give any additional special instruction.

### C.     Ineffective Assistance of Counsel Claim

Defendant contends that his attorney's failure to object to Officer Cardenas's expert testimony at trial constituted ineffective assistance of counsel. "'To prevail on a

---

[6]     CALCRIM No. 332 states in relevant part, "Witnesses were allowed to testify as experts and give opinions. You must consider the opinions, but you are not required to accept them as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the fact or information on which the expert relied in reaching that opinion. . . . You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

12

claim of ineffective assistance of counsel, defendant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice."' (*People v. Hart* (1999) 20 Cal.4th 546, 623 [85 Cal.Rptr.2d 132, 976 P.2d 683].) Prejudice occurs only if the record demonstrates 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052, 2068, 80 L.Ed.2d 674].) 'When . . . the record sheds no light on why counsel acted or failed to act in the manner challenged, the reviewing court should not speculate as to counsel's reasons. . . . Because the appellate record ordinarily does not show the reasons for defense counsel's actions or omissions, a claim of ineffective assistance of counsel should generally be made in a petition for writ of habeas corpus, not on appeal.' (*People v. Diaz* (1992) 3 Cal.4th 495, 557-558 [11 Cal.Rptr. 353, 834 P.2d 1171].)" (*People v. Lucero* (2000) 23 Cal.4th 692, 728-729.) Claims of ineffective assistance of counsel should not be raised on direct appeal "except in those rare instances where there is no conceivable tactical purpose for counsel's actions." (*People v. Lopez* (2008) 42 Cal.4th 960, 972.) "'[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.' [Citation.]" (*Ibid.*)

The record in this case does not indicate why defense counsel failed to object to Officer Cardenas's expert testimony during trial. Defendant's claim of ineffective assistance of counsel is thus appropriately brought in a habeas corpus proceeding. (*People v. Seaton, supra*, 26 Cal.4th at p. 643 [holding that when defense counsel failed to object to testimony and "the record does not reveal why counsel did not object, [an ineffective assistance of counsel] claim rests on facts outside of the record, and may only be raised on habeas corpus"].)

In any event, the record permits an inference of a conceivable tactical purpose for defense counsel's failure to object to Officer Cardenas's expert testimony. Defense counsel may have decided not to object to Officer Cardenas's expert testimony because she wished to emphasize flaws in the undercover purchase procedure rather than detract from that argument with an attack on Officer Cardenas's qualifications. Moreover,

13

defense counsel may not have objected because she did not want to give the officer the opportunity to supply any perceived gap in his qualifications or methodology. When defense counsel cross-examined Officer Cardenas at trial, she elicited testimony from him that he did not note defendant's clothing in his report and that he did not know what happened to the $20 bill he handed to defendant. The questions asked on cross-examination, along with defense counsel's closing argument emphasizing procedural flaws in the undercover operation, suggest a possible tactical purpose for defense counsel's failure to object to Officer Cardenas's expert testimony.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:



TURNER, P. J.



KIRSCHNER, J.[*]

---

[*] Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.