# IN THE SUPREME COURT OF CALIFORNIA

DAVONYAE SELLERS,

Petitioner,

v.

THE SUPERIOR COURT OF SACRAMENTO COUNTY,

Respondent;

THE PEOPLE,

Real Party in Interest.

S287164

Third Appellate District
C100036

Sacramento County Superior Court
21FE018661

January 29, 2026

Justice Liu authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Kruger, Groban, Evans, and Streeter* concurred.

---

* Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Opinion of the Court by Liu, J.

Enacted as part of California's legalization of marijuana, Health and Safety Code section 11362.3, subdivision (a)(4) makes it an infraction to have an "open container" of marijuana in a vehicle. The question before us is whether a small amount of loose marijuana scattered on the rear floor of a car violates that provision. We hold it does not. We further hold that the officers here lacked probable cause to conduct a search of the vehicle.

## I.

This case arises out of a warrantless vehicle search. Three officers from the Sacramento Police Department pulled over the driver, Kayla Sepulveda, for failing to stop fully behind the limit line of a crosswalk before turning through an intersection. Defendant Davonyae Sellers was in the front passenger seat. Other than the traffic violation, there was nothing suspicious about the car. The officers approached the vehicle, one on the driver's side and two on the passenger's side. The officers shined their flashlights into the car and began questioning the occupants, asking if there was anything illegal in the car such as marijuana or guns. Sepulveda said no. A records check revealed no concerns, and Sepulveda and Sellers were cooperative throughout.

The officers did not suspect Sepulveda of driving under the influence. But they observed a rolling tray on the backseat, as

1

well as what they called at the time "weed crumbs" scattered on the rear floorboard behind and under the passenger seat. When an officer told Sepulveda that there was a rolling tray, she said, "yeah, sir, but there's no weed in here." When the officer noted what appeared to be marijuana on the floor, she said it was because of the tray. An officer observed that Sepulveda's upper lip was sweating, and she explained she had a medical problem and was wearing a patch. The officers had Sepulveda and Sellers step out, then searched the car and Sepulveda's purse. They did not find additional marijuana or marijuana-related items. An officer collected the material on the floor, which weighed 0.36 grams but was never tested. The officers located an unregistered pistol near the front passenger seat.

Sellers was charged with unlawful possession of a firearm by a person previously adjudged a ward of the juvenile court. Sellers moved to suppress evidence of the gun on the basis that the vehicle search was improper. The prosecution did not contest Sellers's standing to challenge the search before the magistrate or in any subsequent proceeding. The magistrate suggested the stop was pretextual and repeatedly expressed "concern over the conduct of the officers" but ultimately denied the motion, holding that the search was supported by probable cause based solely on the marijuana crumbs. The magistrate reasoned that although marijuana is legal in California, open containers of marijuana in vehicles are still prohibited, so the crumbs constituted "contraband" giving rise to probable cause. A trial court upheld the magistrate's ruling.

The Court of Appeal also upheld the search, concluding that the loose marijuana was "contraband" being "illegally transported." (*Sellers v. Superior Court* (2024) 104 Cal.App.5th 468, 477 (*Sellers*).) Notwithstanding the Attorney General's

concession that there was no open container violation, the court construed the statute "to prohibit any person from possessing marijuana *that is not in a closed package or container* while driving, operating, or riding as a passenger in a vehicle." (*Id.* at p. 478.) In the alternative, the court held that even if the marijuana were not contraband, the totality of the circumstances — the apparent nervousness of the occupants, the rolling tray, the marijuana on the floor, and Sepulveda's denial of marijuana in the car — supported the search. (*Id.* at pp. 478–479.)

Justice Duarte dissented from both holdings. (*Sellers*, *supra*, 104 Cal.App.5th at pp. 479–482 (dis. opn. of Duarte, J.).) Noting that the incident "was clearly a targeted traffic stop of a car that appears to have contained African-American and Hispanic individuals," she reasoned that a violation of the open container law requires the presence of a container. (*Id.* at pp. 479–480.) She emphasized that there was no evidence the "marijuana scattered on the rear floorboards was accessible for consumption by anyone in the car," and that "although the amount scraped from the floorboards may have been 'useable,' there was neither evidence that the marijuana was in any condition to actually *be* used nor evidence that anyone was in the position to scrape it together and use it while driving, operating, or riding in the car." (*Id.* at p. 481.) Analogizing to alcohol, she reasoned that "common sense dictates that a small amount of beer spilled on the rear floorboards of a car would not constitute an open container of alcohol" even though a tablespoon of beer could be " 'ingested.' " (*Id.* at p. 480.) Justice Duarte observed that the scattered amount constituted "*one-eightieth* of the amount that would be *legal* if it were in a sealed baggie on the front seat." (*Id.* at p. 481.) In her view, it would

be absurd to "criminalize the tiny amount of scattered marijuana on the rear floorboards but legalize the closed baggie in the front seat containing 80 times that amount." (*Ibid.*)

We granted review to decide whether a small amount of marijuana scattered on the floor of a vehicle constitutes a violation of Health and Safety Code section 11362.3, subdivision (a)(4).

## II.

Health and Safety Code section 11362.3 was enacted in 2016 as part of Proposition 64, which broadly legalized marijuana possession for adults 21 and older. (*People v. Raybon* (2021) 11 Cal.5th 1056, 1063–1064 (*Raybon*); all undesignated statutory references are to the Health and Safety Code.) Proposition 64 "was intended 'to establish a comprehensive system to legalize, control and regulate'" marijuana; it "'[p]ermit[s] adults 21 years and older to use, possess, purchase and grow nonmedical marijuana within defined limits.'" (*Raybon*, at p. 1063.)

The marijuana legalization provision states: "Subject to Sections 11362.2, 11362.3, 11362.4, and 11362.45, but notwithstanding any other provision of law, it shall be lawful under state and local law, and shall not be a violation of state or local law, for persons 21 years of age or older to: [¶] (1) Possess, process, transport, purchase, obtain, or give away to persons 21 years of age or older without any compensation whatsoever, not more than 28.5 grams of cannabis not in the form of concentrated cannabis." (§ 11362.1, subd. (a).)

In addition, the provision specifies that "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure,

and no conduct deemed lawful by this section shall constitute the basis for detention, search, or arrest." (§ 11362.1, subd. (c).) One stated rationale for Proposition 64 was to "stop ruining people's lives for marijuana"; the voter guide explained that over 8,800 felony arrests were made each year for marijuana violations and characterized them as "an enormous waste of law enforcement resources." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) argument in favor of Prop. 64, p. 98 (Voter Guide).) Proposition 64 was also informed by findings and recommendations of the Blue Ribbon Commission on Marijuana Policy, which observed that "[r]acial disparities persist in the way our criminal justice system continues to deal with marijuana-related offenses." (Blue Ribbon Com. on Marijuana Policy, Pathways Report: Policy Options for Regulating Marijuana in California (2015) p. 4.) The Commission singled out "spotty enforcement" of marijuana laws that could result in "unfair criminalization of individuals who were trying to play by the rules" (*ibid.*) and said "any legalization effort" should "address racial and economic disparities" (*id.* at p. ii). (See Voter Guide, *supra*, argument in favor of Prop. 64, p. 98 [Prop. 64 "adheres closely" to the Commission's recommendations].)

The law also sought to protect against marijuana-impaired driving. (See Voter Guide, *supra*, text of Prop. 64, § 3, subd. (p), p. 180.) Section 11362.3, subdivision (a)(4), the statute at issue in this case, states that the legalization provision "does not permit any person to," among other things, "[p]ossess an open container or open package of cannabis or cannabis products while driving, operating, or riding in the passenger seat or compartment of a motor vehicle." A violation is an infraction punishable by no more than $250. (§ 11362.4, subd. (b).)

Separate from Proposition 64, the Legislature has enacted an independent restriction on the presence of marijuana in vehicles. Section 23222, subdivision (b)(1) of the Vehicle Code makes it an infraction for anyone to have "in their possession on their person, while driving a motor vehicle upon a highway . . . a receptacle containing cannabis or cannabis products, . . . which has been opened or has a seal broken, or loose cannabis flower not in a container." Although the magistrate relied on this provision to justify the search, we agree with the Attorney General that this provision applies only to a driver who has one of the covered items "in their possession on their person" (*ibid.*) and therefore has no applicability to this case.

## A.

We review the interpretation of Proposition 64 de novo, using the same principles that apply to statutory interpretation. (*People v. Gonzales* (2018) 6 Cal.5th 44, 49.) " 'Where a law is adopted by the voters, "their intent governs." ' " (*Raybon, supra,* 11 Cal.5th at p. 1065.)

The text of section 11362.3, subdivision (a)(4) prohibits driving or riding in a car with an "open container" or "open package" of cannabis. As the Court of Appeal acknowledged, the "literal meaning" of the provision requires the presence of a container. (*Sellers, supra,* 104 Cal.App.5th at p. 478.) In ordinary usage, loose marijuana is not an "open container . . . of cannabis" (§ 11362.3, subd. (a)(4)) because there is no container.

The Court of Appeal rejected this literal interpretation of section 11362.3, subdivision (a)(4), observing that "[a]lthough the words used in a statute are the most useful guide to its intent, the language of a statute should not be given a literal meaning if doing so would frustrate the purposes of the

6

legislation or lead to absurd results." (*Sellers*, *supra*, 104 Cal.App.5th at p. 478.) The court reasoned that requiring the presence of a container would "undermine the purpose of the open container law, which is to ensure that marijuana is transported . . . such that it is inaccessible while driving or riding as a passenger in a vehicle." (*Ibid.*) It would "defy logic," the court noted, "to conclude that an individual with an . . . open package of marijuana is violating the law, while someone with usable amounts of marijuana scattered loosely on a seat or around the passenger compartment is not." (*Ibid.*) The court construed the statute, "consistent with its apparent purpose, to prohibit any person from possessing marijuana *that is not in a closed package or container* while driving, operating, or riding as a passenger in a vehicle." (*Ibid.*)

We partly agree and partly disagree with the Court of Appeal. We agree that a literal interpretation of the provision would contradict the statute's manifest purpose and lead to absurd consequences the voters could not have intended. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 ["A literal construction of an enactment . . . will not control when such a construction would frustrate the manifest purpose of the enactment as a whole."]; *People v. Bullard* (2020) 9 Cal.5th 94, 109 [rejecting an interpretation that is "so patently illogical that we cannot imagine any plausible reason why voters might have intended that result"].) The universally understood purpose of an open container provision is to reduce impaired driving by inhibiting ready access to intoxicating substances. But in the context of marijuana, as opposed to alcohol, requiring the presence of a container would frustrate that purpose. For example, an open bag of marijuana gummies in the center console would violate the provision, but the same gummies

dumped into the console would not, even though they are equally accessible and equally implicate the provision's motivating concern. Although we do not lightly depart from the plain meaning of a legislative enactment, we do not think the voters intended this patently illogical result. Reducing impaired driving necessarily focuses on the presence and accessibility of an intoxicating substance, not whether the substance is held in an actual container.

At the same time, we find that interpreting the statute to apply to *any* loose marijuana is too broad. The purpose and context of Proposition 64, as well as common sense, counsel against construing section 11362.3, subdivision (a)(4) to cover conduct entirely divorced from the potential for impaired driving. (*Raybon, supra*, 11 Cal.5th at p. 1069 [" ' "[T]he language of a statute must be given a reasonable interpretation . . . and . . . , when opportunity arises, made compatible with common sense." ' "].) It would go too far, and belie voters' expectations, for the provision to apply to conduct with no relation to its underlying concern.

Proposition 64 made it broadly legal for adults not only to "[p]ossess" but also to "transport" marijuana. (Voter Guide, *supra*, text of Prop. 64, § 4.4, p. 180; see *People v. Shumake* (2019) 45 Cal.App.5th Supp. 1, 8 (*Shumake*) ["The law permits possession and transportation of up to 28.5 grams of cannabis in a car."].) It explicitly stated that lawful marijuana-related conduct may not constitute the basis for police intrusions into the lives of California citizens. (Voter Guide, text of Prop. 64, § 4.4, p. 180.) As noted, arguments in favor of the initiative said that marijuana arrests were an "enormous waste of law enforcement resources" and that the initiative would "stop ruining people's lives for marijuana." (*Id.*, argument in favor of

Prop. 64, p. 98; see *Raybon*, *supra*, 11 Cal.5th at p. 1065 [in determining the most reasonable interpretation of an initiative, we may " ' "refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet" ' "].)

Regarding marijuana in vehicles, the Voter Guide emphasized that Proposition 64 would continue to prohibit impaired driving: "While the measure changes penalties for many marijuana-related crimes, the penalties for driving a vehicle while under the impairment of marijuana would remain the same." (Voter Guide, *supra*, analysis of Prop. 64 by Legis. Analyst, p. 95.) The "Purpose and Intent" section stated: "It is the intent of the people in enacting this act to accomplish the following: . . . [¶] . . . [¶] (p) Maintain existing laws making it unlawful to operate a car or other vehicle used for transportation while impaired by marijuana." (*Id.*, text of Prop. 64, § 3, pp. 179–180.) And a table of "Activities Not Allowed Under the Measure" includes "[s]moking marijuana . . . while driving a car." (*Id.*, analysis of Prop. 64 by Legis. Analyst, p. 92, figure 2.) Although we have observed that this table was "an incomplete summary" that did not list, among other things, the open container provision (*Raybon*, *supra*, 11 Cal.5th at p. 1074), these materials leave no doubt that the electorate's primary vehicle-related concern was impaired driving.

Acknowledging the purpose of open container provisions, the Attorney General agrees there are some reasonable limitations on the scope of section 11362.3, subdivision (a)(4). For example, an unusable amount of marijuana in a car does not implicate the open container provision. In *People v. Leal* (1966) 64 Cal.2d 504 (*Leal*), we held that drug "possession" necessarily refers to narcotics that are "usable for sale or consumption." (*Id.*

at p. 512.) We reasoned that "in penalizing a person who possesses a narcotic the Legislature proscribed possession of a substance that has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such substance." (*Ibid.*) The magistrate here thought the case turned on whether the marijuana on the floor constituted a usable quantity.

Courts of Appeal have also invoked concepts such as usability, accessibility, and enablement of consumption when assessing the scope of open container provisions. For example, in the alcohol context, a court held that an open bottle of tequila on a raised area directly behind the driver's headrest in a Corvette was a violation of an open container provision. (*People v. Souza* (1993) 15 Cal.App.4th 1646, 1649, 1652 [applying Veh. Code, § 23225].) The provision allows storage of open or unsealed alcohol containers in the trunk or, if the vehicle has no trunk, in an area " 'not normally occupied by the driver or passengers.' " (*Souza*, at p. 1651.) The defendant argued that the provision did not apply because the bottle was not in a "normally occupied" area and "the plain language of the statute says nothing about accessibility." (*Id.* at pp. 1651, 1652.) The court disagreed and inferred a principle of accessibility from the statutory text, reasoning that the Legislature's "obvious intent" was "to make certain that open containers which contain alcohol are inaccessible to the driver and his passengers." (*Id.* at p. 1652; see also *People v. McCloskey* (1990) 226 Cal.App.3d Supp. 5, 8 [noting that the predecessor statute of an alcohol open container provision prohibited unsealed receptacles " 'immediately accessible to his person' "].)

In the marijuana context, courts have differed in how they define "open container" but have relied on similar concepts. In

*In re Randy C.* (2024) 101 Cal.App.5th 933 (*Randy*), a court concluded that an unburned blunt — that is, a cigar filled with cannabis — on a passenger's lap constituted an "open container" of marijuana under section 11362.3, subdivision (a)(4). (*Randy*, at pp. 940–941.) Although a blunt may not be a traditional "container," the court reasoned that it contained a "usable amount" of marijuana and "presented no barrier to accessing the marijuana. On the contrary . . . paper wrapping holds the marijuana so that it can be smoked, thereby facilitating its consumption." (*Ibid.*; cf. *People v. Johnson* (2020) 50 Cal.App.5th 620, 633 (*Johnson*) [concluding that a knotted baggie was not an "open container" because there was a "barrier to accessing the content"].)

Conversely, in *People v. Hall* (2020) 57 Cal.App.5th 946 (*Hall*), a court rejected the argument that loose marijuana in the center console and in a driver's lap was a violation of section 11362.3, subdivision (a)(4). (*Hall*, at p. 958.) In doing so, the court noted the defendant's argument based on *Leal* that there was "no evidence of a usable quantity." (*Hall*, at p. 958.) The defendant also relied on *People v. Thomas* (1966) 246 Cal.App.2d 104, which reversed a marijuana possession conviction based on " ' "fragments of marijuana" ' " in an individual's shirt pocket, applying the maxim that " ' "[t]he law does not concern itself with trifles." ' " (*Hall*, at p. 958 & fn. 8.) Noting that the officers saw " 'remnants of suspected marijuana' " and that the leafy substance on the driver's lap " 'fell off somewhere at the scene,' " the court suggested that the magistrate had not considered the ash, remnants, or broken bits on the driver's lap substantial enough to implicate the open container provision. (*Id.* at p. 958.)

In sum, the purpose, context, and case law on section 11362.3, subdivision (a)(4) suggest that what it covers is conduct bearing a discernible nexus to the potential for impaired driving. As the Attorney General notes, until recently open container provisions have been relevant primarily in the context of alcohol, another legal but highly regulated intoxicating substance. In enacting Proposition 64, voters intended to "[m]aintain existing laws" prohibiting operating a vehicle while impaired. (Voter Guide, *supra*, text of Prop. 64, § 3, subd. (p), p. 180.) The initiative therefore included an open container provision, which, as amici curiae explain, "reflect[ed] the longstanding rationale originally from the alcohol context that prohibiting open containers acts as a prophylactic against impaired driving." Although the "open container" concept as applied to marijuana reflects the same purpose, alcohol and marijuana are materially different. The nexus to impaired driving is inherent to open containers of alcohol; an open container of beer or liquor facilitates imminent consumption. For marijuana, many forms require preparation before ingestion, and the presence of an open container is not always necessary or sufficient to facilitate consumption. For example, the unburned blunt in *Randy* — not something we might otherwise call a "container" — is more analogous to a can of beer than a bag of loose marijuana unprepared for smoking. (*Randy*, *supra*, 101 Cal.App.5th at p. 941.)

To guide courts in applying section 11362.3, subdivision (a)(4), we elucidate sensible concepts immanent in the case law. To start, we agree with the Attorney General that the marijuana must be of a usable quantity. "[U]*seless* traces or residue" does not suffice. (*Leal*, *supra*, 64 Cal.2d at p. 512.) But even when present in a usable quantity, marijuana that is not in an

imminently usable condition or is entirely inaccessible to the occupants of a vehicle does not implicate the provision's underlying concerns. Marijuana that is not in a state to be consumed or that cannot be reached "while driving, operating, or riding" in a vehicle has no potential for impaired driving. (§ 11362.3, subd. (a)(4).) As Justice Duarte noted below, a small amount of beer spilled on the floor of a car would not constitute an open container violation. This would be true even if a large quantity of beer were spilled — say, if a bottle broke in transportation — because it would not be in usable condition. By analogy, to implicate the purpose of section 11362.3, subdivision (a)(4), marijuana in a vehicle must be imminently consumable and readily accessible.

We hold that at a minimum, to constitute a violation of section 11362.3, subdivision (a)(4), marijuana in a vehicle must be of a usable quantity, in imminently usable condition, and readily accessible to an occupant.

Whether marijuana in a vehicle satisfies these conditions is fact dependent. In assessing whether the marijuana is imminently usable or readily accessible, courts should consider whether the marijuana could be consumed with minimal effort by an occupant of the vehicle. At the very least, the state of the marijuana (for example, whether it is fresh, dried, ground, or rolled into a cigarette) and the presence of paraphernalia that could facilitate its consumption (such as a heating element and a receptacle for smoking or vaporizing the marijuana) are relevant facts. (See Voter Guide, *supra*, analysis of Prop. 64 by Legis. Analyst, How do Individuals Use Marijuana?, at p. 91 [noting that marijuana is "most common[ly]" smoked and that users "[t]ypically" smoke only "dried flowers"].)

Our holding today rejects the assumption of some Court of Appeal opinions, including the decision below, that section 11362.3, subdivision (a)(4) requires any marijuana in a vehicle to be in a "sealed" container in order to be lawful. (*Sellers*, *supra*, 104 Cal.App.5th at p. 478; see *People v. McGee* (2020) 53 Cal.App.5th 796, 804 [same].) No sealing requirement appears in the text of the statute. While marijuana in a sealed container is neither readily accessible nor imminently usable and thus does not violate the open container statute, marijuana in a vehicle need not be in a sealed container to be lawful under section 11362.3, subdivision (a)(4).

**B.**

The small amount of loose, crumbled marijuana on the car's floorboards in this case was not a violation of section 11362.3, subdivision (a)(4).

The officers here saw "weed crumbs" scattered on the rear passenger-side floorboard. Scraped together, the debris amounted to 0.36 grams, about a third of the size of a grape and roughly one-eightieth the legal amount of marijuana. The officers testified that "any marijuana that could be ingested" was "usable." The Attorney General does not defend that position before this court and instead argues that the 0.36 grams of apparent marijuana constitute a "usable" amount.

We need not decide whether this amount constitutes a usable amount because the marijuana here was neither imminently usable nor readily accessible. There was no indication that the scattered, loose marijuana on the floor was in any usable condition or readily accessible to Sellers or Sepulveda from the front of the car. As Justice Duarte observed, "there was neither evidence that the marijuana was in any

14

condition to actually *be* used nor evidence that anyone was in the position to scrape it together to use it while driving, operating, or riding in the car." (*Sellers*, *supra*, 104 Cal.App.5th at p. 481 (dis. opn. of Duarte, J.).) No officer suggested he was concerned that Sepulveda or Sellers could have somehow, while riding in the front of the car, collected the scattered bits of marijuana from the rear floor behind Sellers for imminent consumption. Nor was there evidence of paraphernalia, such as matches, lighters, rolling papers, blunts, or vaporizers, that could facilitate the marijuana's consumption.

In light of the marijuana crumbs and the rolling tray that the officers saw on the backseat, it is reasonable to infer that someone, at some point, had rolled marijuana in the backseat or had used the rolling tray with marijuana. But the officers had no reason to believe that any marijuana was recently rolled, and the officers did not suspect impaired driving, underscoring the disconnect between the scattered bits of loose marijuana on the rear floor and potential for imminent consumption.

The circumstances in this case are not what voters envisioned in penalizing vehicle occupants for possessing an "open container" of marijuana in order to deter impaired driving. Even if the crumbs constituted a usable amount, there is no evidence that they were in imminently usable condition or readily accessible to anyone in the vehicle.

## III.

We next address the Court of Appeal's alternative analysis: whether, even if there was no open container violation, there was probable cause to search the vehicle without a warrant. (*Sellers*, *supra*, 104 Cal.App.5th at pp. 478–479.)

"Warrantless searches 'are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.'" (*People v. Lopez* (2019) 8 Cal.5th 353, 359 (*Lopez*).) "Whether a particular kind of search is exempt from the warrant requirement ordinarily depends on whether, under the relevant circumstances, law enforcement's need to search outweighs the invasion of individual privacy." (*Ibid*.)

The Attorney General relies only on the automobile exception to justify the search here. "Under the automobile exception to the warrant requirement, an officer may search a vehicle if the officer has probable cause to believe that evidence of a crime will be found inside." (*Lopez, supra*, 8 Cal.5th at p. 372; see *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1225.) The exception has been justified by "the ease with which an automobile might be moved out of the jurisdiction before a warrant can be obtained." (*Ibid*.) Although the high court has said the privacy interest in a vehicle is "'less substantial'" than in a home, it is "'nevertheless important and deserving of constitutional protection.'" (*Lopez*, at p. 366.)

The totality of the circumstances here did not give rise to probable cause. The officers pulled Sepulveda over for a minor traffic violation; she was not driving erratically, and there was nothing else suspicious about the vehicle. There were no issues with Sepulveda's license or registration, and a records check revealed no warrants, parole, or probation.

Importantly, the officers had no suspicion of impaired driving. The marijuana-related conduct here — possession of the rolling tray on the backseat and the crumbs on the floor — was lawful and alone was insufficient to find probable cause of

a violation of California controlled substances law. Proposition 64, as amended, specifies that "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, and *no conduct deemed lawful by this section shall constitute the basis for detention, search, or arrest.*" (§ 11362.1, subd. (c), as amended by Stats. 2017, ch. 27, § 129, p. 1431, italics added.) This provision "fundamentally changed the probable cause determination." (*Hall, supra,* 57 Cal.App.5th at p. 954.) After Proposition 64, "the law is settled that the lawful possession of marijuana in a vehicle does not provide probable cause to search the vehicle." (*Randy, supra,* 101 Cal.App.5th at p. 939; see *Shumake, supra,* 45 Cal.App.5th at p. Supp. 6 [holding that a plastic tube of 1.14 grams of marijuana in a car could not provide the basis for a search because it was "far below the 28.5 grams permitted by law"].)

The Attorney General argues that the marijuana-related conduct here was "suggestive" of unlawful marijuana. It is difficult to see the limit of that reasoning; a small amount of lawful marijuana could always be said to suggest additional, potentially unlawful amounts or forms of marijuana. Adopting that argument would undermine the mandate that lawful cannabis and cannabis-related conduct shall not constitute the basis for a search. (§ 11362.1, subd. (c); see *Shumake, supra,* 45 Cal.App.5th at p. Supp. 6 [concluding it would violate section 11362.1 to infer from 1.14 grams that there was " 'more marijuana in the vehicle' "]; *Hall, supra,* 57 Cal.App.5th at p. 953 ["[A] lawful amount of marijuana in a vehicle cannot, by itself, justify an officer's search for *more* marijuana on the theory that if a person has a lawful amount of marijuana, there may be a greater, unlawful amount of marijuana in the person's car."].)

To accept the Attorney General's position would grant officers a degree of discretion that is incompatible with Proposition 64's purpose of limiting detention, search, and arrest authority in order to prevent disparate enforcement of marijuana laws. (*Ante*, at p. 5.)

Further, contrary to the Attorney General's characterization, Sepulveda's denial that there was marijuana in the car cannot be considered "dishonest" under the circumstances. When asked about the presence of marijuana in the car, Sepulveda reasonably could have believed that the officer was asking about illicit marijuana or at least usable marijuana, not scattered crumbs on the rear floorboards. When pressed about the rolling tray, Sepulveda acknowledged its presence but told the officers there was no longer marijuana in the car. When asked about the crumbs, she suggested it was from the tray. Her statements were accurate: Other than the bits on the floor, there was no marijuana in the car nor drug paraphernalia of any kind.

Finally, the apparent nervousness of Sepulveda and Sellers does not support probable cause under the circumstances. Five members of this court recently described the "danger in considering 'nervous' and 'evasive' behavior in the totality of the circumstances analysis when devoid of real world context." (*People v. Flores* (2024) 15 Cal.5th 1032, 1052 (conc. opn. of Evans, J., joined by Liu, Kruger, Groban & Jenkins, JJ.).) Judgments of nervous or evasive behavior are highly subjective, and often the opposite behavior can just as easily be interpreted as suspicious. Here, the behavior of the vehicle's occupants was neither " 'odd' " nor "noteworthy." (*Id.* at p. 1045 (maj. opn.).) The magistrate described the incident as follows: "[Y]ou have three officers who make a stop because the driver is a few feet

over the limit line. They converge on a car. And they are keeping the occupants of that car occupied . . . while they are looking for something." Indeed, after pulling Sepulveda over for the common act of protruding slightly into a crosswalk, three armed officers in uniform surrounded the car and began peering through windows with flashlights in broad daylight, asking the occupants whether they had anything illegal in the car. The magistrate described the stop as pretextual and repeatedly expressed concerns "as a citizen" about the officers' conduct. (See also *Sellers*, *supra*, 104 Cal.App.5th at pp. 479–480 (dis. opn. of Duarte, J.) [same].) It is unsurprising that the occupants of a vehicle would feel nervous in such circumstances.

The magistrate correctly declined to rely on nervousness in assessing probable cause here. As he put it, "[t]he fact [that Sepulveda and Sellers] are nervous, sweating, that's not probable cause. . . . I don't generate anything from that. Three officers who are armed approaching a car would make most people nervous. No question about it." The Attorney General also does not rely on nervousness, noting that it is "not especially illuminating" under the facts of this case.

Courts have declined to uphold vehicle searches in similar circumstances. In *People v. Lee* (2019) 40 Cal.App.5th 853, the court held that a bag of marijuana and a wad of cash in a driver's pocket, the fact that he " 'tensed up' " while being handcuffed, and his statement that he delivered medical marijuana did not establish probable cause to search a vehicle. (*Id.* at p. 866.) Declining to rely on pre-Proposition 64 case law, the court reasoned that there was no suggestion of driving under the influence, that the marijuana was lawful, and that the driver's behavior was "hardly . . . an unusual reaction." (*Ibid.*; see *id.* at pp. 864–866.) The court noted that "[c]onsistent with the

19

directive of section 11362.1, subdivision (c), . . . possession of a small and legal amount of marijuana provides scant support for an inference that [the] car contained contraband." (*Id.* at p. 866.)

And in *Shumake*, the court concluded that 1.14 grams of marijuana in a plastic tube was lawful and "could not then serve as the basis for the search of appellant's car." (*Shumake*, *supra*, 45 Cal.App.5th at p. Supp. 6.) The court noted that upon being told there was some "bud" in the car, the officers could have asked questions, "consistent with the type of reasonable inquiry officers use when they smell alcohol in a car." (*Id.* at p. Supp. 8; see also *Johnson*, *supra*, 50 Cal.App.5th at pp. 634–635 [odor of marijuana, baggie with " 'a couple grams' of marijuana" in the center console, and actions outside the car in resisting officers did not give rise to probable cause].)

The facts here are far afield from those in *People v. Fews* (2018) 27 Cal.App.5th 553, which found probable cause for a vehicle search based on marijuana-related conduct. There, the vehicle was moving erratically in an area known for narcotics sales; the driver was holding a half-smoked blunt; and the officer could smell recently burned marijuana. (*Id.* at pp. 556–558.) Here the officers did not observe erratic driving, nor did they have any basis for suspecting illicit marijuana in the vehicle other than lawful marijuana.

In sum, the totality of the circumstances did not give rise to probable cause to search the vehicle.

## CONCLUSION

In order to violate section 11362.3, subdivision (a)(4), marijuana in a vehicle at least must be of a usable quantity, in imminently usable condition, and readily accessible to an

occupant.  Because the marijuana crumbs here were neither imminently usable nor readily accessible to any occupant of the vehicle, there was no violation of the statute.  We further find no probable cause for the vehicle search on these facts.  We reverse the decision of the Court of Appeal and remand for further proceedings, including determination of the proper remedy.

**LIU, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**
**STREETER, J.**[*]

---

[*]    Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Sellers v. Superior Court

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 104 Cal.App.5th 468
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S287164
**Date Filed:** January 29, 2026

_____

**Court:** Superior
**County:** Sacramento
**Judge:** Deborah D. Lobre

_____

**Counsel:**

Amanda M. Benson, Public Defender, John Wesley Hawk Stoller, Kendall Dawson Wasley and Cecilia Herrera, Assistant Public Defenders, for Petitioner.

Neil K. Sawhney and Amanda Young for the American Civil Liberties Union, ACLU of Northern California, ACLU of Southern California, ACLU of San Diego and Imperial Counties and California Public Defenders Association as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Michael P. Farrell and Kimberley A. Donohue, Assistant Attorneys General, Michael R. Johnsen, Christopher J. Rench, Dina Petrushenko, Edrina M. Anderson, Clara M. Levers, Rachelle A. Newcomb and Charlotte Woodfork, Deputy Attorneys General, for Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John Wesley Hawk Stoller
Assistant Public Defender
700 H Street, Suite 0270
Sacramento, CA 95814
(916) 874-1020

Neil K. Sawhney
ACLU of Northern California
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493

Charlotte Woodfork
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
(916) 210-7761